# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEQUAUN LYNN HALL,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No.  321755
Jackson Circuit Court
LC No.  13-004564-FH

Before:  BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals his jury trial conviction of assaulting, resisting, and obstructing a police officer, MCL 750.81d(1).  Defendant was sentenced to one year of probation, and we affirm.

Michigan State Police troopers Andrew Pinkerton and Craig Ziecina were patrolling the city of Jackson together on the evening of June 6, 2013, in a marked patrol vehicle.  Both officers were wearing full police uniforms.  Ziecina and Pinkerton noticed that defendant failed to stop at a stop sign and further determined that defendant was driving over the speed limit.  The officers then activated the lights on their vehicle and effectuated a traffic stop on defendant.

Defendant opened the window on the driver's side of his vehicle as Ziecina approached him.  Ziecina testified that defendant immediately began complaining, arguing, yelling, and asking why the officers stopped him.  Ziecina testified that he asked defendant for his driver's license, registration, and proof of insurance, but defendant never provided these documents.  Ziecina testified that he asked defendant four times for the documents, but defendant refused each time.  Ziecina testified that he asked defendant to step out of his vehicle, but defendant refused that request as well.  Ziecina then opened the door to defendant's vehicle and again asked defendant to exit the vehicle, and when defendant again refused, Ziecina reached across defendant, unbuckled his seatbelt, and asked defendant again to get out of the vehicle.  Defendant did not comply.  Ziecina then grabbed defendant's left arm, pulled him out of the vehicle, and arrested defendant.  A recording of the incident taken from the dashboard of Ziecina and Pinkerton's patrol vehicle was played for the jury at trial.

After defendant was convicted, he moved the trial court for a directed verdict of acquittal or a new trial, arguing that the evidence was insufficient for the jury to find him guilty, that his waiver of counsel was ineffective, and that the verdict was against the great weight of the

-1-

evidence. The trial court initially denied defendant's motion for being untimely. Defendant subsequently moved this Court to remand and order the trial court to rule on his motion. This Court granted defendant's motion. On remand, the trial court denied defendant's motion for a new trial.

## I. DIRECTED VERDICT

Defendant first argues that his motion for directed verdict should have been granted because there was insufficient evidence for the jury to find him guilty of resisting and obstructing a police officer. "[T]his Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). Any conflicts in the evidence are to be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). It is for the jury, not this Court, to assess the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

> The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." [*People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014), quoting *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010).]

Relevant to the circumstances here, "obstruct" includes the "knowing failure to comply with a lawful command." MCL 750.81d(7)(a). In addition, "'the prosecution must establish that the officers' actions were lawful' as an element of resisting or obstructing a police officer under MCL 750.81d." *Quinn*, 305 Mich App at 491, quoting *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

Defendant's only challenge for this issue is that there was insufficient evidence for a jury to conclude that he knowingly failed to comply with any of Ziecina's commands. We disagree. Ziecina testified that he asked defendant four times for his driver and vehicle information and defendant refused to provide it each time. Ziecina further testified that he asked defendant three times to step out of his vehicle and defendant again refused. Pinkerton testified that he heard Ziecina ask defendant several times for his license and it appeared that defendant was not producing his license.

Although defendant testified that Ziecina never asked him to provide his license and never asked him to step out of the vehicle, that testimony is in direct contradiction with the officers' testimony. Any such conflicts are insufficient to support defendant's claim because any conflicts are resolved in favor of the prosecution. *Terry*, 224 Mich App at 452. Further, there is no question that Ziecina's requests to defendant to provide his driver's license and to step out of the vehicle were lawful, as they were done pursuant to a legal traffic stop. See MCL 257.311; *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009). As a result, we hold that there

was sufficient evidence for a jury to conclude that defendant failed to comply with a lawful command, and the trial court properly denied defendant's motion for a directed verdict of acquittal.

## II. WAIVER OF COUNSEL

Defendant next argues that his waiver of counsel was ineffective. We review a trial court's factual findings regarding a defendant's waiver of right to counsel for clear error. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "[T]o the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id.* Further, we review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010).

### A. REQUIREMENTS FOR SELF-REPRESENTATION

The Sixth Amendment of the United States Constitution "provides that the accused in a criminal prosecution 'shall enjoy the right . . . to have the Assistance of counsel for his defense.'" *Russell*, 471 Mich at 187, quoting US Const, Am VI. The right to counsel attaches "at or after the initiation of adversarial judicial proceedings." *People v Hickman*, 470 Mich 602, 607; 684 NW2d 267 (2004). However, "a criminal defendant may choose to waive representation and represent himself." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). In Michigan, a criminal defendant's right to represent himself "is secured by both Constitution and statute." *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976), citing Const 1963, art 1, § 13 and MCL 763.1.

Because the right to counsel qualifies as a fundamental right, the United States Supreme Court has instructed courts to "indulge in every reasonable presumption against [its] waiver." *Brewer v Williams*, 430 US 387, 404; 97 S Ct 1232; 51 L Ed 2d 424 (1977). The Michigan Supreme Court has established a three-step inquiry, commonly called the *Anderson* factors, to determine if a defendant's waiver is effectual:

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190; see also *Anderson*, 398 Mich at 367-368.]

In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides the following:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Furthermore, under MCR 6.005(E), the defendant must reaffirm at each subsequent proceeding that he still does not want the assistance of counsel.

The three *Anderson/Russell* factors and court rules do not require "a litany approach." *People v Adkins (After Remand)*, 452 Mich 702, 725; 551 NW2d 108 (1996), overruled in part on other grounds, *Williams*, 470 Mich at 641 n 7. Rather, "[a] particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered." *Id.* Further, only "'substantial compliance and not literal adherence to the guidelines'" is sufficient. *Id.* at 726, quoting *United States v Miller*, 910 F2d 1321, 1324 (CA 6, 1990).

Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. [*Id.* at 726-727.]

## B. BACKGROUND FACTS

At every proceeding subsequent to his arraignment, defendant requested to represent himself and emphatically rejected the assistance of counsel. At the September 13, September 25, November 4, and December 10, 2013, hearings, the trial courts[1] told him that he had the right to a lawyer, but defendant stated that he wanted to represent himself. Then, at a January 10, 2014, pretrial hearing, after again asserting that he wanted to represent himself and did not want any assistance from any attorney, the following exchange took place:

*The Court*: -- in representing yourself, what if you have a problem getting your video in?

*The Defendant*: Well, why should I have a problem if that's my only evidence?

*The Court*: Well, you're not an attorney and you don't -- I'm not going to argue with you, I'm just saying, [standby counsel is] going to be present in case you have a legal question, okay?

---

[1] Defendant was bound over from the district court to the circuit court on November 4, 2013.

*The Defendant*:  I don't need her.

Then, on February 10, 2014, on the day of trial, before voir dire of the potential jurors, the trial court told defendant that his standby attorney "is here if you have any questions for her, any legal questions."  Defendant said that he understood.  Then, before the potential jurors were brought in, the trial court reminded defendant that he had the right to be represented by counsel, but defendant again declined.

## C.  THE *ANDERSON* FACTORS

The first requirement under *Anderson* was satisfied at each hearing after defendant initially told the district court that he wanted to represent himself on September 13, 2013.  Defendant was unequivocal and clear in his requests to represent himself.

We also conclude that the second requirement under *Anderson* was substantially satisfied at the January 10, 2014, pretrial hearing.  There, the trial court asked defendant what he would do if he was unable to have the video recording of the traffic stop admitted into evidence.  When defendant asked the trial court why he might have a problem having the video admitted, the trial court reminded defendant that he was not an attorney and that defendant could ask his standby counsel legal questions.  By making defendant aware that he could have trouble getting evidence admitted because he was not an attorney and telling him that he could ask legal questions of his standby counsel, we are satisfied that the trial court substantially warned him about the risk he was putting himself in by representing himself.  However, there is absolutely no indication that either the district court or the circuit court informed defendant before the January 10, 2014, hearing of any risk involved in representing himself.  Therefore, to the extent that the trial court found that the second *Anderson* factor was satisfied with regard to lower court proceedings that took place before January 10, 2014, the court clearly erred.

Similarly, the third requirement under *Anderson* was satisfied at the January 10, 2014, pretrial hearing when trial court informed defendant that it appointed standby counsel to assist him, that defendant was not being assessed fees for standby counsel, and that the purpose of the standby counsel was to assist defendant with any legal questions he had.  However, there is no indication on the record that the district court or trial court took measures to ensure that defendant's self-representation would not disrupt, inconvenience, or burden the proceedings before that January 10, 2014, hearing.  Therefore, to the extent that the trial court found that the third *Anderson* factor was satisfied before January 10, 2014, the court clearly erred.

## D.  MCR 6.005(D)

The requirement of MCR 6.005(D)(1) with regard to notifying defendant of his charge and potential penalties was met at the June 7, 2013, arraignment.  There, the district court told defendant the nature of the charge against him and the maximum penalty he faced if convicted.  Although the district court failed to inform defendant of the maximum penalty as a second-offense habitual offender, the fact that the district court "did not specifically address . . . the range of possible punishment is not enough to defeat a finding of substantial compliance with the waiver procedures in this case."  *Id.* at 731.  However, as already discussed, the requirement under MCR 6.005(D)(1) that defendant be informed of the risks of self-representation was not

satisfied until January 10, 2014. The requirements of MCR 6.005(D)(2) were satisfied at the September 13, 2013, hearing when the trial court told defendant that he had a right to represent himself at every stage in the proceedings and asked him whether he wanted to represent himself. Therefore, the trial court did not clearly err in finding that MCR 6.005(D)(1) and (2) were entirely satisfied as of January 10, 2014, but it did err insofar as it found MCR 6.005(D)(1) fully satisfied before that date.

## E.  MCR 6.005(E)

The record indicates that defendant first requested to represent himself at the September 13, 2013, hearing. It also is not disputed that in every subsequent proceeding after that date, defendant reaffirmed his desire not to be represented by counsel and defendant never requested that counsel be appointed. Therefore, the requirements of MCR 6.005(E) were met.

## F.  APPLICATION OF HARMLESS ERROR ANALYSIS

Having concluded that all of the requirements for an effective waiver of counsel were not satisfied until January 10, 2014, the prior waivers necessarily were invalid.

Error regarding a criminal defendant's waiver of his right to counsel "implicates a constitutional right." *People v Willing*, 267 Mich App 208, 223; 704 NW2d 472 (2005). Constitutional error "must be classified as either structural or nonstructural. If the error is structural, reversal is automatic." *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). But nonstructural constitutional error is "subject to the harmless beyond a reasonable doubt test." *Id.*

The November 4, 2013, preliminary examination held significant consequences for defendant because it was the proceeding where it was decided that there was probable cause to bind defendant over to the circuit court for trial. *Willing*, 267 Mich App at 224; see also *People v Washington*, 30 Mich App 435, 437; 186 NW2d 13 (1971) ("[A] preliminary examination is a critical stage in a criminal proceeding . . . ."). But there is no indication that any of the other pretrial proceedings held "significant consequences" for defendant such that they constituted a critical stage.

Although the wrongful deprivation of counsel during a critical stage of the criminal process has been held to be structural error requiring automatic reversal, *Willing*, 267 Mich App at 224, citing *United States v Cronic*, 466 US 648, 659 n 25; 104 S Ct 2029; 80 L Ed 2d 657 (1984), the United States Supreme Court has held that, where a defendant is completely deprived of representation at a preliminary examination, reversal is not warranted unless the defendant suffered prejudice as a result of that deprivation, *Coleman v Alabama*, 399 US 1, 10-11; 90 S Ct 1999; 26 L Ed 2d 387 (1970). This Court has adopted the view from *Coleman* and noted that the deprivation of counsel at a preliminary examination "does not lead to automatic reversal." *Washington*, 30 Mich App at 437.

Applying the harmless error standard to this case, we conclude that defendant's ineffective waiver was harmless beyond a reasonable doubt. First, because defendant still chose to represent himself even after the court made the necessary disclosures under *Anderson* and MCR 6.005(D), albeit late, it is clear that he would have made the same decision to represent

himself if the same disclosures had been provided to him before the preliminary examination. Thus, had the court made the *Anderson* disclosures prior to the preliminary examination, the proceeding would have transpired just as it did, with defendant representing himself. Second, even if defendant had been represented by counsel at the preliminary examination, it is clear that the testimony from Ziecina, who was the lone witness, was sufficient to support defendant's bind over on the charged crime, and counsel's presence would not have been able to alter this fact, especially given the low evidentiary threshold necessary for bind over. See *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003), citing MCL 766.13 (stating that statute requires bind over on a finding of "probable cause" instead of beyond a reasonable doubt). Finally, although defendant was deprived of counsel during the preliminary examination, there is no indication on the record that he was prevented from presenting any defense or, more importantly, that he was unable to present a defense at trial because of anything that occurred then.

Therefore, we hold that the district and trial court's error in depriving defendant of counsel at any proceedings preceding January 10, 2014, was harmless beyond a reasonable doubt. As a result, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

## III. GREAT WEIGHT OF EVIDENCE

Defendant next argues that the verdict was against the great weight of the evidence. "We review for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *People v Unger (On Remand)*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

A "new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). When the testimony "is patently incredible or defies physical realities," "is material and is so inherently implausible that it could not be believed," or "has been seriously impeached and the case [is] marked by uncertainties and discrepancies," a new trial may be justified. *Id.* at 643-644 (citations omitted).

Defendant argues that Ziecina's testimony is completely incredible because the video shows that Ziecina could not have made a total of seven requests and two statements in the period of time from when Ziecina began talking to defendant until he pulled defendant from the vehicle. However, we conclude that the video does not render Ziecina's testimony valueless as a matter of law. Simply put, to the extent the video suggests that Ziecina could not have given seven requests in that short period of time, the video does not make it "so inherently implausible" that Ziecina made at least one lawful command, which is all the jury needed to find defendant guilty. Accordingly, the issue of Ziecina's credibility was for the jury, *id.* at 637, and the trial court did not abuse its discretion in denying defendant's motion.

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra