# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ROBERT GEORGE FULLER,

       Defendant-Appellant.

UNPUBLISHED
February 22, 2018

No. 334227
Monroe Circuit Court
LC No. 16-242549-FH

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of resisting and obstructing a police officer, MCL 750.81d(1), and interfering with a crime report, MCL 750.483a(3)(b). The trial court sentenced defendant to concurrent sentences of 120 days in jail and 36 months' probation for both convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Monroe County Sheriff Deputy Leland Jordan responded to a disturbance call involving four juveniles in the roadway near Plank and Sherman roads in Milan Township. As Jordan approached the area, he did not see any activity in the roadway, but he did observe four people—two males and two females—in the front yard of an adjacent home. Jordan saw one of the males (later determined to be John Lake) push one of the females (later determined to be Amber Hollis). Lake and Hollis then ran into the house, leaving defendant and Kayla Miller in the yard.

Jordan parked his police cruiser in the home's driveway and exited the vehicle. As he approached defendant and Miller, defendant yelled "get the [expletive] off my property." Jordan observed blood on the passenger window of a Jeep next to which Miller was standing. Jordan testified that defendant was stumbling, had slurred speech, and was acting strangely. Jordan opined that both defendant and Miller were intoxicated. He stated that he suspected that a crime had been committed based on the fact that there was blood on the window of the Jeep and his observation of Lake pushing Hollis. Defendant continually repeated that he wanted Jordan off his property, to which Jordan replied that he was investigating a disturbance and "wasn't leaving until [he] figured out what was going on."

-1-

Jordan testified that he wanted to talk to Miller,[1] and that it appeared to him that "she was wanting, willing to help answer questions, but was unable to based on [defendant's] behavior." According to Jordan, defendant kept yelling at him and Miller, telling Miller that she did not have to answer any of Jordan's questions and that she only needed to provide Jordan with her name and birthdate. Jordan further testified that, "[a]t one point in time while I was trying to glean information from [Miller] she said I want to tell you but I can't and basically because of [defendant], she wasn't able to." Jordan also stated that Miller was "making eye contact as, you know, looking away from me at him because she was scared it seemed." Jordan testified that at one point during this interaction, which lasted "at least" 10 minutes, defendant went to his car and, upon returning, and as Jordan was trying to speak to Miller, placed himself directly between them. Defendant grew more confrontational and Jordan felt that defendant was acting as if he "was going to fight." Defendant continued to prevent Jordan from speaking to Miller.

Feeling unsafe, Jordan decided to arrest defendant. He told defendant that he was under arrest and to place his hands behind his back. Defendant did not comply. Jordan stated that he "went hands on with [defendant] and took him to the ground," and that defendant continued to resist until Jordan's backup, Milan Police Sargent Ty Chatell, arrived and assisted Jordan in handcuffing defendant. Defendant was searched incident to his arrest, and a folding knife was found in his back pocket, locked in the open position. The trial court admitted photographs of the knife over defense counsel's objection.

Larry Fiebelkorn testified that he was driving by the house at the time of the incident, and decided to stop to help Jordan. Fiebelkorn testified that when he approached the scene, he noticed defendant yelling at Miller to "get inside the house" while Jordan was attempting to ask her questions. He described defendant as "being aggressive towards keeping the officer from investigating."

Chatell testified that he arrived at the scene to find Jordan and defendant already on the ground. He observed Jordan ordering defendant to place his hands behind his back, and defendant failing to comply. Chatell further testified that he assisted Jordan in handcuffing defendant by placing defendant's left hand behind his back.

Defendant testified at trial, and acknowledged that he had told Miller that she did not need to cooperate with Jordan and that he had told Jordan to leave his property. He denied resisting arrest, maintaining that Jordan had tackled him before he could comply with Jordan's directives. With regard to the knife that was found on his person, defendant explained that he had been installing drywall at his home earlier in the day and that he had used the knife to cut drywall tape. Defendant stated that he did not remember telling Miller to go into the house but that it was "possible" that he had done so.

---

[1] Jordan initially mistook Miller for Hollis, who had an active warrant for her arrest on a separate issue. Miller did not testify at trial.

The trial court instructed the jury, but did not instruct the jury that the prosecution had to prove, as an element of the offense of resisting and obstructing, that the police officers had acted lawfully. Defense counsel did not object to the jury instructions.

Defendant was convicted as described. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel should have objected to Jordan's testimony concerning what Miller had said to him and to Jordan's opinion that Miller seemed "scared." Defendant argues that this testimony constituted hearsay, violated his constitutional right of confrontation, and was speculative. Defendant also argues that his trial counsel was ineffective for failing to object to the jury instructions on the charge of resisting and obstructing a police officer.

To preserve for appellate review a claim of ineffective assistance of counsel, a defendant must move for a new trial or for a *Ginther*[2] hearing. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not do so. Our review is therefore limited to errors apparent on the record. See *id*.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (quotation marks and citation omitted).

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). To show prejudice, a defendant "must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (quotation marks omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). Defense counsel is not required to make a meritless objection. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## A. JORDAN'S TESTIMONY

Defendant argues that his counsel was ineffective for failing to object to the following testimony by Jordan: "At one point in time while I was trying to glean information from [Miller,] she said I want to tell you but I can't and basically because of Mr. Fuller, she wasn't able to." We disagree.

Hearsay is a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); see also *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). Generally, hearsay is inadmissible unless it falls within an exception or is deemed not to constitute hearsay under the Michigan Rules of Evidence. MRE 801(d) and 802.

It is not entirely clear from the record which portion of the above statement was Jordan's direct quotation of Miller (or a paraphrase), and which reflected Jordan's perception of the situation. However, even assuming that the entirety of Jordan's statement was either a quotation of Miller's out-of-court declaration or a paraphrase of it, it is not clear that it was offered for the truth of the matter asserted. MRE 801(c). Moreover, even if it was, we do not find trial counsel ineffective for failing to object. The relevant offense with which defendant was charged proscribes "[t]hreaten[ing] or intimidat[ing] any person to influence a person's statement to a police officer conducting a lawful investigation of a crime . . . ." MCL 750.483a(3)(b). But Miller's statement did not indicate that defendant had threatened or intimidated her. For example, it may have reflected that Miller feared that speaking to the officer could lead to her or defendant's arrest, or it may simply have reflected that she independently was concerned that defendant would be upset with her if she spoke to the police. Because Jordan's testimony about Miller's statement was vague and subject to multiple interpretations, defense counsel may have decided not to risk further clarification by objecting to the statement as hearsay. See *People v Douglas*, 496 Mich 557, 588 n 12; 852 NW2d 587 (2014) (noting that it may be trial strategy for defense counsel not to object to testimony in order to prevent further development of the record).

Moreover, even if Jordan's testimony was hearsay, two exceptions to the hearsay rule, namely, (1) a statement of then existing mental, emotional, or physical condition, and (2) excited utterance, apply.

MRE 803(3) excepts from the hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." MRE 803(3). Here, Miller was expressing her then-existing mental or emotional condition—that while she wished to speak to Jordan, she felt unable to do so. Therefore, MRE 803(3) applied to this statement. See *People v Fisher*, 449 Mich 441, 450-451; 537 NW2d 577 (1995). An objection to Jordan's testimony would have been meritless. *Chelmicki*, 305 Mich App at 69.

MRE 803(2) defines the excited utterance exception as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." As Jordan testified, Miller seemed scared during their interaction.

Considering that two other people in the yard with Miller had recently been involved in an physical altercation of some kind, defendant was yelling at Miller not to answer Jordan's questions, there was blood on the Jeep's window, defendant's aggressive behavior continued to escalate, and defendant intentionally stood between Jordan and Miller, it is reasonable to believe that Miller was "under the sway of excitement precipitated by an external startling event" and thus did not "have the reflective capacity for fabrication," especially considering that the interaction only lasted about 10 minutes. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted); see also *People v Kowalak (On Remand)*, 215 Mich App 554, 557-560; 546 NW2d 681 (1996). Therefore, MRE 803(2) applied to this statement, and an objection to Jordan's testimony again would have been meritless. *Chelmicki*, 305 Mich App at 69.

Finally, defendant has not demonstrated that, even if Jordan's testimony was inadmissible hearsay and defense counsel's failure to object was unreasonable, the outcome of the proceedings would have been different had his counsel objected. As discussed later in this opinion, Jordan was permitted to testify regarding his perception of Miller during the encounter, which was that she was scared and continually glanced at defendant while speaking to Jordan, and that Jordan was unable to obtain information from her because of defendant's behavior. The jury heard evidence that defendant repeatedly yelled at Miller that she did not need to talk to Jordan, used expletives, stood between them when Jordan tried to speak to her, and ordered Miller to go into the house. The jury could have concluded, even without Jordan's testimony regarding Miller's statement, that Miller was intimidated or threatened by defendant and that the threat or intimidation influenced her statements to a police officer conducting a lawful investigation. MCL 740.483a(3)(b), (4).

Defendant's contention that his counsel should have objected to Jordan's testimony that Miller seemed afraid is also without merit. A police officer may provide lay testimony regarding his observations in a criminal matter and his "opinion formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988); see also MRE 701 ("[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). In this case, Jordan testified that he observed Miller "making eye contact as, you know, looking away from me at him because she was scared it seemed." Jordan also testified that defendant was shouting at her not to answer Jordan's questions and that defendant intentionally stood between Miller and Jordan. A rational fact-finder would find this information helpful in determining whether Miller was intimidated or threatened, and Jordan's rationally based perception that Miller seemed afraid was therefore relevant and admissible. *Id*. Accordingly, defense counsel was not deficient when he chose not to make a meritless objection. See *Chelmicki*, 305 Mich App at 69.

Lastly, defendant argues that Jordan's testimony violated his constitutional right of confrontation because he was unable to examine Miller. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. See also Const 1963, art 1, § 20. Generally speaking, the Confrontational Clause bars the admission of a witness's testimonial statements if the witness does not appear at trial. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A pretrial

statement is testimonial "if the declarant would reasonably expect that the statement will be used in a prosecutorial manner and if the statement is made 'under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005) (citation omitted).

Miller's statement (as recalled by Jordan) was not testimonial. At the time Miller made the statement, she could not reasonably have expected that her statement could be used in a later trial. *Id*. At the time, Jordan was attempting to gather information related to a call that he had received about a disturbance in the roadway; Miller had no reason to believe that defendant would ultimately be charged with interfering with a police investigation and resisting arrest due largely to his own escalating aggressive behavior.

## B. JURY INSTRUCTIONS

Defendant also argues that his counsel was ineffective for failing to object to the jury instructions on the charge of resisting and obstructing. Although, as stated later in this opinion, we agree that defendant would have been entitled to an instruction that the prosecution was required to prove that police officers acted lawfully, we find that the error in not providing that instruction was harmless. Therefore, defendant cannot establish that his counsel's performance in not objecting to the instructions as issued was prejudicial. *Gaines*, 306 Mich App 300.

## III. FAILURE TO PROPERLY INSTRUCT THE JURY

Defendant also argues that the trial court erred when it failed to instruct the jury that the prosecution had the burden of proving that officers acted lawfully. We agree that defendant would have been entitled to such an instruction, but hold that defendant was not prejudiced by the error.

We generally review de novo jury instructions that involve questions of law. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). And generally "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*. However, a party must object or request a given jury instruction to preserve the error for review. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did not object to the trial court's jury instructions, and did not request the jury instruction that he now claims should have been given. Therefore, this issue is unpreserved. See *id*. We review unpreserved errors for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e. clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. In order to show that respondent's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and brackets omitted).

A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014), vacated in part on other grounds 498 Mich 914 (2015). "This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred." *Id*. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id*. However, "[e]ven when somewhat imperfect, jury instructions do not qualify as erroneous provided that they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights." *Id*.

The statutorily-identified elements of resisting or obstructing a police officer under MCL 750.81d(1) are:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." [*People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014).]

Additionally, however, the "prosecution must establish that the officers acted lawfully as an actual element" of this crime. *Id*. at 492; see also *People v Moreno*, 491 Mich 38, 51–52; 814 NW2d 624 (2012). A defendant has the right to resist an unlawful arrest. See *Moreno*, 491 Mich at 47.

Defendant was entitled to have the jury instructed on all of the elements of the offense of resisting and obstructing. See *Moreno*, 491 Mich at 51–52; *Wood*, 307 Mich App at 519. It is error when a "jury [is] not instructed on all three elements of the offense of resisting or obstructing a police officer[.]" *Quinn*, 305 Mich App at 494. And the prosecution and defendant agree in this case that the prosecution was required to prove that the police officers acted lawfully. See *Quinn*, 305 Mich App at 494. The issue is therefore whether the trial court's failure to instruct the jury on this third element of the charged offense affected defendant's substantial rights, i.e., prejudiced him. *Wood*, 307 Mich App at 519.

Defendant is unable to show that he was prejudiced as a result of the trial court's error because ample evidence existed to prove that the police officers acted lawfully. Jordan testified that he responded to a call regarding a disturbance, and attempted to investigate. While attempting to interview Miller, defendant yelled at both of them. Defendant repeatedly instructed Miller not to cooperate with Jordan, and attempted to get between Jordan and Miller while Jordan was attempting to interview her. Fiebelkorn also testified that defendant was yelling at Miller and preventing her from speaking to Jordan. As defendant grew more confrontational and aggressive, Jordan began to fear for his own safety, and Jordan told defendant that he was under arrest and directed him to place his hands behind his back. When defendant failed to comply, officers took action to secure his compliance. There was no evidence that the officers did anything more than was necessary to restrain defendant long enough to apply the handcuffs. The evidence left little, if any, doubt that officers acted lawfully.

Indeed, and perhaps for that reason, defendant did not contend otherwise at trial; rather, he argued that he did not in any way resist or obstruct the officers.[3] Consequently, and although the jury instruction in question should have been given, there was no factual predicate or argument presented at trial that would have given the jury a basis for determining that the police officers' conduct was anything but lawful.[4] Defendant's testimony that he did not interfere with Jordan's investigation did not call into question the lawfulness of the officers' conduct, but merely gave rise to an issue of credibility regarding the separate issue of whether defendant had resisted or obstructed the officers. That issue was for the fact-finder to resolve, and we will not interfere with the jury's determination. See *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007) (stating that, "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."). Because the evidence established that police officers acted lawfully, defendant cannot establish plain error. *Id*.

## IV. ADMISSION OF PHOTOGRAPHS OF THE KNIFE

Defendant argues that the trial court should not have admitted the photographs of the knife found on defendant's person because they were irrelevant and because their prejudicial effect outweighed their probative value. We disagree that reversal is required.

We review for an abuse of discretion a preserved challenge to a trial court's admission of evidence. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). We review de novo preliminary questions of law, such as the trial court's interpretation of the rules of evidence. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). An abuse of discretion occurs when a court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). A trial court abuses its discretion if it admits evidence that is inadmissible as a matter of law. *Bynum*, 496 Mich at 623. However, the admission of evidence in error does not require reversal unless the defendant is able to show that it was more probable than not that the error was outcome determinative. See *People v Lukity*, 460 Mich 484, 495; 596 Mich 607 (1999). An outcome determinative error is one that undermines the reliability of the verdict. See *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000).

Photographs of the knife were not relevant to material issues in the case; defendant was not charged with any offense related to the possession or use of the knife. MRE 401 (evidence is relevant if it has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[3] In fact, defense counsel actually characterized Jordan's commands to defendant as "lawful commands" in his closing argument, but argued that, at most, defendant was "a little over zealous and a little boisterous" in "defending and asserting his rights" and that the testimony of various witnesses, including defendant, created a reasonable doubt regarding what had actually happened.

[4] The circumstances of this case are therefore vastly different that those in *Quinn* (on which defendant relies), where the lawfulness of police officers' conduct was placed squarely at issue.

evidence.") We find the prosecution's argument that defendant's possession of the knife was relevant to show his intent to intimidate Jordan or Miller to be a bit of a stretch, considering that defendant never displayed or referenced the knife during the incident. Moreover, because no one disputed defendant's possession of the knife or any of the physical characteristics of the knife, photographs of the knife did not aid the jury in their deliberations. We conclude that the trial court abused its discretion by admitting the photographs. *Unger*, 278 Mich App at 217.

Nonetheless we hold that the error was harmless. The photographs, all of which depict nearly the same image, show an unfolded, red-handled knife with a single blade, which appears to be a few inches in length, a "typical" knife of the kind carried for use as a tool by many people. There are no ominous or frightening markings on the knife. And although the jury heard that defendant was carrying the knife in an open position, which could suggest that it was more readily available for use as a weapon should defendant have wished to use it as such, the jury also heard that defendant did not display, brandish, or even refer to the knife, which was not discovered until after defendant was handcuffed. After examining the entire record, we conclude that the admission of the photographs of the knife was not outcome determinative. See *Rodriguez*, 463 Mich at 474.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola