PEOPLE v QUINN

Docket No. 309600. Submitted November 13, 2013, at Lansing. Decided May 29, 2014, at 9:05 a.m.

Arthur J. Quinn was convicted by a jury of resisting and obstructing a police officer, MCL 750.81d(1), after he allegedly refused to identify himself to a patrolling sergeant who had followed him and his son from a parking lot into an apartment building. The officer testified that she attempted to arrest defendant's son on the landing of a stairway when he broke away and followed defendant into an apartment. The officer called for backup, placed her foot in the door to prevent it from being closed, and sprayed pepper spray into the apartment. When backup arrived, defendant was handcuffed and arrested. Defendant filed a pretrial motion to suppress, arguing that the officer's actions were unlawful and violated his Fourth Amendment rights. The trial court, James C. Kingsley, J., denied the motion on the basis of *People v Ventura*, 262 Mich App 370 (2004), which held that a person could be convicted of violating MCL 750.81d regardless of whether the arrest was lawful. After defendant was convicted and sentenced, the Supreme Court overruled *Ventura* in *People v Moreno*, 491 Mich 38 (2012). Defendant moved for a posttrial directed verdict of acquittal or for a new trial on the basis of *Moreno*, among other grounds. The court denied the motion, ruling that the arrest was lawful and that *Moreno* did not apply retroactively. Defendant appealed.

The Court of Appeals *held*:

1. The trial court erred by concluding that *Moreno* does not apply retroactively. The purpose of the new rule announced in *Moreno* was to reestablish the common-law rule that a person may resist an unlawful arrest. This rule applies retroactively to cases in which a defendant raises the issue on appeal and either preserved it in the trial court or can demonstrate plain error affecting the defendant's substantial rights.

2. Defendant was not entitled to a directed verdict in his favor because the evidence submitted at trial, when viewed in the light most favorable to the prosecution, could persuade a rational trier

of fact to conclude that the officer had acted lawfully with respect to defendant on the basis of a reasonably articulable suspicion that criminal activity was afoot.

3. Defendant was entitled to a new trial because the jury was not instructed to determine whether the officer's actions were lawful.

Reversed and remanded for a new trial.

CRIMINAL LAW — RESISTING OR OBSTRUCTING PERSONS PERFORMING DUTY — RIGHT TO RESIST ILLEGAL POLICE CONDUCT.

The holding in *People v Moreno*, 491 Mich 38 (2012), that a person may resist illegal police conduct applies retroactively to cases in which a defendant charged with violating MCL 750.81d raises the issue on appeal and either preserved it in the trial court or can demonstrate plain error affecting the defendant's substantial rights.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *David E. Gilbert*, Prosecuting Attorney, and *Marc Crotteau*, Assistant Prosecuting Attorney, for the people.

*Law Offices of Michael Skinner* (by *Michael Skinner*) for defendant.

Before: WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ.

WILDER, J. Defendant, Arthur J. Quinn, appeals as of right his jury trial conviction of resisting or obstructing a police officer, MCL 750.81d(1). Consistent with *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012), we reverse and remand for a new trial.

### I. FACTS AND PROCEDURAL HISTORY

On June 7, 2011, at about 1:00 a.m., Debra Novar, a sergeant with Emmet Township Department of Public Safety, was on "random patrol." A severe storm had passed through the area during the previous week, and

many areas suffered storm damage. Additionally, several power lines were down, some areas remained without power, and there had been several thefts in the area. Novar testified that, mindful of the storm and recent thefts, she noticed a truck parked outside a salon and went to investigate why someone was parked there at that hour. As Novar approached the salon, she realized that the truck was not parked in the salon's lot, but in a parking lot belonging to an adjacent apartment building—the Eisenhower Apartments. Novar testified that she looked in the direction of the apartments and noticed two people, later identified as defendant and his son Brian Quinn, in a dark carport in the apartment lot. Novar testified that she did not know what they were doing, but she wanted to find out.

Novar got out of her vehicle and twice yelled for them to come toward her. Someone inside the carport said, "No, you come over here," and then said, "See you later." Both defendant and Brian then left the carport and appeared to be walking quickly up the sidewalk toward the apartments. Novar radioed for assistance and ran to catch up with the men. Defendant and Brian entered through a door in the rear of the building and the door closed behind them. Novar testified that, while still in pursuit, she opened the door and saw the men standing on a landing area at the top of the steps. Novar testified that she asked to see their identification and asked if they lived at the apartments. According to Novar, each denied living there and refused to show Novar their identification. Novar maintained that she then attempted to place Brian under arrest, but Brian broke free and followed defendant into an apartment. Novar recalled that she placed her foot inside the apartment door to prevent the door from being closed. Novar eventually deployed her pepper spray inside the apartment and kept her foot inside the door until

backup assistance arrived, at which time she pushed on the door with her shoulder and the door opened. Officers informed defendant that he was under arrest, but defendant pulled away and said he did not need to go to jail. One officer used an "arm bar" to force defendant onto the ground, handcuffed him, and placed defendant under arrest.

Defendant lived in Saginaw, but he testified that he was staying at the Eisenhower Apartments with Brian to perform some work for the owner, his father-in-law. Defendant testified that, at about 1:00 a.m., they went outside to defendant's truck to make sure that it was locked and that he had not left any tools in the vehicle. Defendant testified that the parking area was very dark and he noticed a vehicle, with no lights on, pull into the salon parking lot next door. Defendant heard someone say, "Hey, you guys, come here." Brian replied, "No, come over here." Defendant testified that he saw a flashlight come on. Defendant was "terrified"; he told Brian that they should go inside and call 9-1-1. Defendant testified that he and Brian then walked quickly toward the apartment building.

Defendant testified that he and Brian entered the apartment building and walked quickly up the stairs to the apartment they were using during their stay. Defendant entered the apartment, grabbed his telephone from the kitchen table to call 9-1-1, and then noticed that Brian had not entered the apartment with him. Defendant testified that, as he walked back toward the door to get Brian, the front door opened "violently" and knocked the telephone out of his hand. Defendant testified that he saw Brian sprayed with pepper spray and that he was sprayed as well. Defendant testified that he was afraid, thought someone was attempting to harm him, pushed against the door to prevent any

further attack, and yelled for Brian to call 9-1-1. Defendant testified that he was still unaware that a police officer was attempting to enter the apartment. He testified that he did not see Novar at the top of the steps because he was already inside the apartment when she entered the building. According to defendant, Novar never asked him for his identification and never identified herself.

Defendant testified that, after someone sprayed him with pepper spray and he attempted to shut the door, he picked up his telephone, went into the kitchen, and sat at the table. Defendant tried to use the telephone but was unable to see because of the pepper spray. While he was attempting to make a call, someone came into the kitchen, "flung" him onto the floor, and handcuffed him. Defendant testified that it was at that point that he realized that officers were in his apartment and involved in the incident. Defendant denied dragging his feet or being uncooperative on the way to the police car.

Relevant to the issue raised on appeal, defendant filed a pretrial motion to suppress, arguing that Novar's actions were unlawful and violated his Fourth Amendment rights. Relying on *People v Ventura*, 262 Mich App 370; 686 NW2d 748 (2004), the trial court denied his motion because, under *Ventura*, the lawfulness of an arrest was not an element of resisting arrest in a prosecution alleging a violation of MCL 750.81d(1).

After the trial court sentenced defendant, the Supreme Court decided *Moreno*, which overruled *Ventura*. Defendant moved for a posttrial directed verdict of acquittal and, in the alternative, for a new trial, on the basis of *Moreno*. Defendant argued that he was entitled to a directed verdict because his detainment and arrest were unlawful and, under *Moreno*, defendant had the common-law right to resist unlawful police action. In

the alternative, defendant requested that the trial court grant him a new trial because (1) the great weight of the evidence indicated that defendant was innocent and (2) defendant was denied his constitutional rights to present a defense, to a properly instructed jury, and to be confronted with the witnesses against him because he was not allowed to argue the unlawfulness of the arrest. The trial court denied the motion for the reasons that the arrest was lawful and *Moreno* was not retroactive.

## II. ANALYSIS

On appeal, defendant first argues that the trial court erroneously determined that *Moreno* is not retroactive. We agree. "The retroactive effect of a court's decision is a question of law that this Court reviews de novo." *Johnson v White*, 261 Mich App 332, 336; 682 NW2d 505 (2004). Generally, judicial decisions establishing a new rule of law are given full retroactive effect. *Paul v Wayne Co Dep't of Pub Serv*, 271 Mich App 617, 620; 722 NW2d 922 (2006). A court may limit the retroactive effect of a judicial decision, or give it prospective effect only, if "injustice might result from full retroactivity." *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). The Michigan Supreme Court has considered the following three factors when deciding whether a decision should not be given retroactive application: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice." *Id.*

In *People v Marrow*, 210 Mich App 455; 534 NW2d 153 (1995), this Court held that a defendant must lawfully possess a pistol in order to use the dwelling-house exception in the statute that governs the carrying of a concealed weapon, MCL 750.227(2). Our Supreme

Court overruled *Marrow* in *People v Pasha*, 466 Mich 378, 382-383; 645 NW2d 275 (2002), concluding that *Marrow* added a lawful-possession requirement that did not exist in the statute. In determining whether to apply the new rule regarding lawful possession retroactively, the Court stated: "Prosecutors and courts have relied on *Marrow* in deciding whether to charge or convict a defendant of CCW. Full retroactive application of our holding would undermine the interest in finality of convictions and disrupt the effective administration of justice." *Id.* at 384. Given these considerations, the Court gave the new rule limited retroactive effect to cases where the defendant raised the issue involving the new rule on appeal and either preserved the issue in the trial court or relief was warranted under *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). *Pasha*, 466 Mich at 384.

The purpose of the new rule announced in *Moreno* was to reestablish the common-law rule that a person may resist an unlawful arrest, which was deemed abrogated by this Court in *Ventura*. Just as in *Pasha*, prosecutors and courts relied on *Ventura* and full retroactivity could upset the public's interest in the finality of convictions. Therefore, we conclude that the new rule in *Moreno* should be given limited retroactive effect to cases in which a defendant raised the issue on appeal and the defendant either preserved it in the trial court or can demonstrate plain error affecting substantial rights under *Carines*.[1]

---

[1] This Court considered the retroactive application of *Moreno* in *City of Westland v Kodlowski*, 298 Mich App 647, 653; 828 NW2d 67 (2012), but our Supreme Court vacated that portion of the opinion because, given that probable cause existed to effectuate the defendant's arrest on the basis of facts the defendant admitted, the retroactive effect of the new rule in *Moreno* was not before this Court. *City of Westland v Kodlowski*, 495 Mich 871 (2013).

In this case, defendant preserved the issue of whether Novar's conduct was lawful by raising it in his pretrial motion to suppress. Defendant thereafter preserved the issue of whether *Moreno* applies retroactively to his case in his posttrial motion for a directed verdict or new trial. Finally, defendant raises these issues again on appeal. We therefore hold that, under the facts of this case, *Moreno* applies retroactively.

Next, defendant argues that he should be granted a directed verdict or a new trial on the basis of *Moreno*. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010).

Additionally, according to *Moreno*, 491 Mich at 52, "the prosecution must establish that the officers' actions were lawful" as an element of resisting or obstructing a police officer under MCL 750.81d. We note that in *Moreno*, our Supreme Court did not explicitly state, in so many words, that the lawfulness of the officers' actions is an "element" of resisting or obstructing a police officer. However, it was clear from context and the Court's discussion of the

history of the right to resist unlawful arrest that such lawfulness had been considered an "element" before *Ventura*. Furthermore, cases before *Ventura* explicitly held that the lawfulness of the arrest was an "element." See, e.g., *People v Dalton*, 155 Mich App 591, 598; 400 NW2d 689 (1986). Consequently, it is clear that under *Moreno*, as at common law, the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d.

Defendant does not argue on appeal that the prosecution failed to show that he resisted and obstructed Novar, or that he knew or had reason to know that Novar was an officer. But the third element—whether Novar's actions were lawful—was not an element of the charged offense at the time of the trial, and the prosecutor did not specifically offer evidence to show beyond a reasonable doubt that Novar's actions were lawful.

"Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). However,

> [u]nder certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior. [*People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005) (citations and quotation marks omitted).]

Our review of the evidence submitted at trial, when viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that Novar's actions were lawful. Specifically, a rational trier of fact could conclude that the fact that two individuals were outside in the parking lot of an apartment building at 1:00 a.m., in an area where there had been recent thefts, coupled with the fact that they walked quickly away from Novar into the apartment building and up the stairs to the second-floor landing, and indicated that they did not live in the apartments, created circumstances sufficient to warrant a brief detention. Accordingly, when viewed in a light most favorable to the prosecution, a rational trier of fact could conclude that Novar had a reasonably articulable suspicion that criminal activity was afoot and that her repeated requests to defendant and Brian to produce their identification, and her request to defendant to exit the apartment, were lawful. Therefore, we decline to grant a directed verdict.[2]

Defendant argues, in the alternative, that he should be granted a new trial. On this point, we agree. A "criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

Here, the jury was instructed as follows:

[I]n this case the defendant is charged with the crime of resisting and obstructing a police officer who was performing her duties. To prove this charge the prosecutor must

---

[2] In our view, whether reasonable suspicion existed turns on whether Novar believed defendant lived at the apartment complex. The evidence presented at trial regarding this issue was not undisputed. Although Novar testified that, on the landing, both defendant and Brian said they did not live at the apartment complex, defendant testified that he had no such encounter with Novar on the landing and that he was already inside the apartment when she entered the building.

prove each of the following two elements beyond a reasonable doubt: first, that the defendant resisted or obstructed or opposed a police officer for Emmett Township; to wit, Deb Novar. Obstruct includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command. The defendant must have actually resisted by what he said or did, but physical violence is not necessary.

Second, that the defendant knew or had reason to know that the person the defendant resisted, obstructed, and/or opposed was a police officer performing her duties at the time.

These instructions were consistent with the law at the time of the trial, before *Moreno* was decided. See *Corr*, 287 Mich App at 503. However, after *Moreno,* under the common-law rule, the "prosecution must establish that the officers' actions were lawful" as an element of resisting or obstructing a police officer under MCL 750.81d. *Moreno,* 491 Mich at 51-52. "[T]he long-recognized principle in Michigan caselaw [is] that questions of law in criminal cases are for the trial judge to decide, whereas questions of fact are for the jury." *People v Jones,* 301 Mich App 566, 573; 837 NW2d 7 (2013). While the lawfulness of an arrest is generally a question of law to be decided by the trial court, if the lawfulness of the arrest is an element of a criminal offense, it becomes a question of fact for the jury. *Id.* at 574, citing *Dalton,* 155 Mich App at 598.

As discussed, the lawfulness of Novar's actions is an element of the charged crime and therefore a question of fact for the jury. The jury was not instructed to determine whether Novar's actions were lawful or how to do so. Because the jury was not instructed on all three elements of the offense of resisting or obstructing a police officer according to *Moreno*, and because defen-

dant has the right to a properly instructed jury, *Mills*, 450 Mich at 80-81, we remand for a new trial.

Because we agree with defendant that the jury was not properly instructed, and thus, reversal is required, it is unnecessary for this Court to consider the alternative grounds for a new trial presented by defendant.

Reversed and remanded for a new trial. We do not retain jurisdiction.

WHITBECK, P.J., and RONAYNE KRAUSE, J., concurred with WILDER, J.