*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER IAN MURAWSKI,

Defendant-Appellant.

UNPUBLISHED
October 26, 2023
APPROVED FOR
PUBLICATION
December 14, 2023
9:10 a.m.

No. 365852
Kalamazoo Circuit Court
LC No. 2022-001795-FH

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In this criminal interlocutory appeal, defendant appeals by leave granted[1] the circuit court's order denying his motion to quash the felony information charging two counts of resisting and obstructing a police officer, MCL 750.81d. On appeal, defendant asserts that the circuit court erred by denying the motion to quash because the underlying arrest was unlawful. We reverse and remand for entry of an order granting the motion to quash.

## I. FACTUAL BACKGROUND

This appeal arises out of an altercation that occurred between defendant and three law enforcement officers at Latitude 42 Brewing Company in Kalamazoo, Michigan. At the preliminary examination, Michigan State Police Trooper Derek Reynolds testified that he was initially dispatched to an Ethan Allen furniture store after receiving a dispatch indicating that a man was causing a disturbance inside the store. When Trooper Reynolds arrived, store employees told him that the man had left and went toward Latitude 42, which was located next door. Trooper

---

[1] *People v Murawski*, unpublished order of the Court of Appeals, entered May 25, 2023 (Docket No. 365852).

Reynolds walked into Latitude 42 and spoke to a man who matched the description provided by employees at Ethan Allen. This man was defendant.

Trooper Reynolds spoke with defendant, who denied going to the Ethan Allen store. Trooper Reynolds then asked defendant if he was looking for directions because employees at Ethan Allen reported that the man in the store was asking for directions. Defendant stated that he was looking for directions to Kalamazoo. Trooper Reynolds provided basic directions to Kalamazoo. Trooper Reynolds testified that defendant appeared to be intoxicated. While Trooper Reynolds spoke with defendant, Sergeant Juvon Johnson of the Kalamazoo County Sheriff's Office spoke to the manager. The manager said that she would prefer that defendant leave, and she wanted him "trespassed." Sergeant Johnson later testified that to "trespass" someone meant to inform the person that the establishment wanted them to leave the premises and that criminal charges could result if he or she returned. In other words, the officers were asking defendant to leave the establishment and not return at the establishment's request.

Sergeant Johnson walked over and joined Trooper Reynolds while he was speaking with defendant at the bar. Sergeant Johnson told Trooper Reynolds that the manager wanted defendant to leave and wanted him trespassed. Trooper Reynolds told defendant that he did not do anything wrong but that he had to leave Latitude 42. Defendant agreed to leave. Trooper Reynolds then asked for defendant's identification.[2] Defendant refused to provide any identification. Trooper Reynolds explained that he could not trespass defendant without knowing defendant's name.

Trooper Reynolds asked for defendant's identification several more times, but defendant continued to refuse and cursed at Trooper Reynolds. Finally, Trooper Reynolds told defendant, "[I]f you don't give me your identification, we're going to go to jail." Defendant again said no. Trooper Reynolds then grabbed defendant's right wrist to arrest him. Defendant tensed and pulled back. An altercation with defendant ensued, which included Trooper Reynolds, Sergeant Johnson, and Officer Bryan McLain, also of the Kalamazoo County Sheriff's Office, who came inside to help with the arrest. During the altercation, defendant bit Sergeant Johnson and kicked Officer McLain.

Defendant was ultimately arrested and charged with three counts of resisting and obstructing a police officer; one count for each of the officers involved. At the preliminary examination, Trooper Reynolds acknowledged that a person was not required to provide identification if he or she did not do anything wrong. He clarified that when he told defendant that defendant had not done anything wrong, he meant that defendant did not commit a crime by going in a store and asking for directions. Trooper Reynolds also acknowledged that he could identify someone without identification by asking for their name and date of birth. Moreover, it was possible for him to trespass defendant without identification, but he explained that it was more convenient to look at defendant's photo identification than go back outside and look up defendant

---

[2] Trooper Reynolds initially testified at the preliminary examination that he asked for defendant's identification because both Ethan Allen and Latitude 42 wanted him "trespassed." However, on recross-examination, Trooper Reynolds stated that never had a specific conversation with the employee at Ethan Allen about trespassing defendant. He was advised by Sergeant Johnson that the manager of Latitude 42 wanted defendant to be trespassed.

in his computer system. After the preliminary hearing, the district court declined to bind defendant over on Count 1 because the testimony did not establish clear evidence of resisting and obstructing as it related to Trooper Reynolds. The district court bound over defendant on Counts 2 and 3, related to defendant's attempts to resist arrest by kicking and biting the other two officers.

In the circuit court, the prosecution moved to reinstate Count 1, while defendant moved to quash Counts 2 and 3, arguing that both counts must be dismissed because the initial arrest was unlawful. The circuit court denied both motions. This appeal followed.

## II. ANALYSIS

Defendant argues that the circuit court erred by denying his motion to quash because the arrest forming the basis of the remaining two charges of resisting and obstructing was unlawful. We agree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion to quash for an abuse of discretion. *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). Additionally,

> [t]he standard for reviewing a decision for an abuse of discretion is narrow; the result must have been so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias. A circuit court's decision with respect to a motion to quash a bindover order is not entitled to deference because this Court applies the same standard of review to this issue as the circuit court. This Court therefore essentially sits in the same position as the circuit court when determining whether the district court abused its discretion. In other words, this Court reviews the circuit court's decision regarding the motion to quash a bindover only to the extent that it is consistent with the district court's exercise of discretion. The circuit court may only affirm a proper exercise of discretion and reverse an abuse of that discretion. Thus, in simple terms, we review the district court's original exercise of discretion. [*Id*. (quotation marks and citation omitted).]

The appellate court reviews "de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013) (quotation marks and citation omitted). "When the district court decision addresses whether the alleged conduct falls within the scope of a penal statute, the issue presents a question of law that we review de novo." *Id*. (quotation marks and citation omitted). This Court also reviews de novo the trial court's interpretation of the law related to the motion to quash. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010).

## B. LEGAL BACKGROUND

Here, we are tasked with determining whether sufficient evidence was presented at the preliminary examination to justify binding defendant over for trial on the three counts of resisting

and obstructing a police officer, MCL 750.81d. "At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial." *People v Fairey*, 325 Mich App 645, 648-649; 928 NW2d 705 (2018). "To satisfy this burden, the prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred." *Id*. at 649. Probable cause exists when "the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves" to justify the belief that an offense either "has been or is being committed." *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229 (2014).

Resisting and obstructing a police officer results in a violation of MCL 750.81d(1), which provides:

> [A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

In *People v Quinn*, 305 Mich App 484; 853 NW2d 383 (2014), this Court set forth the elements necessary to establish that a defendant violated MCL 750.81d(1). Specifically, the prosecution must show:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*Id*. at 491 (quotation marks and citation omitted).]

In addition, this Court held that the prosecution must also establish a third element, namely "that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Id*. at 492; see also *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012).

Thus, in the current case, the lawfulness of an arrest is considered a third element of the crime that must also be established by the prosecution in order to bind defendant over for trial. *Moreno*, 491 Mich at 51-52. For an arrest to be deemed lawful, the prosecution must demonstrate that the arresting officer

> ha[d] probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense. [*Vandenberg*, 307 Mich App at 69.]

A defendant has a "common-law right to resist unlawful arrests or other unlawful invasions of private rights." *Moreno*, 491 Mich at 58.

Whether an arrest is lawful necessarily implicates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures. The right against unreasonable searches and seizures is guaranteed by both the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11. "Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *Quinn*, 305 Mich App at 492 (quotation marks and citation omitted). On the other hand,

> [u]nder certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior. [*Id*. (quotation marks and citation omitted, alteration in original).]

"In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v Frohriep*, 247 Mich App 692, 699; 637 N.W.2d 562 (2001). Constitutional safeguards only vest after the defendant has been seized. *Id*. A defendant is generally not "seized" until a police officer "physically hinder[s] defendant's departure and instruct[s] him to stay in the officer's presence." *People v Jenkins*, 472 Mich 26, 34; 691 NW2d 759 (2005).

This case specifically concerns a situation where a defendant was "seized" and arrested after failing to produce identification upon request from a police officer. Whether the prosecution can establish probable cause to bind a defendant over on a charge of resisting and obstructing under such circumstances is a highly fact-driven consideration. In *Quinn*, for example, the defendant was charged with resisting and obstructing arrest after failing to provide identification to police who were investigating an apartment complex in an area associated with several recent thefts. 305 Mich App at 485-487. The defendant was charged with resisting and obstructing under MCL 750.81d. *Id*. at 485, 488. He argued that the arrest was unlawful and violated his Fourth Amendment rights. *Id*. at 488. At the time, the issue of lawfulness of an arrest was governed by *People v Ventura*, 262 Mich App 370; 686 NW2d 748 (2004). Under *Ventura*, the lawfulness of an arrest was *not* considered an element that needed to be proven in order to convict a defendant of resisting and obstructing arrest. *Quinn*, 305 Mich App at 488; *Ventura*, 262 Mich App at 375-376. Thus, relying on *Ventura*, the trial court denied the defendant's motion. *Quinn*, 305 Mich App at 488. The defendant was later convicted as charged. *Id*.

After the defendant was convicted, our Supreme Court decided *Moreno*, 491 Mich 38. *Moreno* overruled *Ventura*, and held that the Legislature did not abrogate the common-law right to resist arrest when it enacted MCL 750.81d. *Id*. at 55-56. It also expressly noted that "the Legislature retained the concept that the offense of resisting and obstructing requires that an officer's actions are lawful." *Id*. at 56. The *Quinn* defendant filed a postconviction motion for a directed verdict of acquittal, arguing that under *Moreno*, his detainment and arrest were unlawful,

-5-

and that he had the right to resist the arrest. *Quinn*, 305 Mich App at 488. The trial court denied the motion, finding that *Moreno* did not apply retroactively. *Id*. at 489.

The defendant appealed, again arguing that he should have been be granted a directed verdict on the charge of resisting and obstructing because the police officer's actions were unlawful under *Moreno*. *Id*. at 491-493. This Court agreed that *Moreno* applied retroactively, but ultimately found that a rational trier of fact could conclude that the officer's actions were lawful. *Id*. at 493. This Court explained:

> Specifically, a rational trier of fact could conclude that the fact that two individuals were outside in the parking lot of an apartment building at 1:00 a.m., in an area where there had been recent thefts, coupled with the fact that they walked quickly away from [the officer] into the apartment building and up the stairs to the second-floor landing, and indicated that they did not live in the apartments, created circumstances sufficient to warrant a brief detention. [*Id*.]

This Court further found that a rational trier of fact could conclude that the officer "had a reasonably articulable suspicion that criminal activity was afoot and that her repeated requests to [the men] to produce their identification, and her request to defendant to exit the apartment, were lawful." *Id*. Accordingly, the Court declined to grant a directed verdict. *Id*. The Court ultimately granted the defendant's request for a new trial, however, because the jury was not instructed to determine whether the officer's actions were lawful. *Id*. at 494-495.

As noted, in *Moreno*, our Supreme Court ruled that the defendant was not properly charged with resisting and obstructing under MCL 750.81d(1) after officers entered his home without a warrant and engaged in a struggle that resulted in his arrest. 491 Mich at 41-43. The arresting officer sustained a torn hamstring and a bruised elbow as a result of the defendant's struggle to resist arrest. *Id*. at 43. The defendant moved to quash the charges, arguing that the arrest was unlawful, but the trial court denied the motion. *Id*. This Court affirmed. *Id*. On appeal, the Supreme Court reversed, holding that because the arrest was unlawful, the charges of resisting and obstructing must therefore be quashed. *Id*. at 58. Although *Moreno* primarily concerned a question of whether the lawfulness of an arrest should be considered an element of resisting and obstructing, the Supreme Court's holding clearly indicates that if an arrest is unlawful, a defendant should not be bound over to be tried for resisting and obstructing. *Id*.

Bearing all of this in mind, we note that the parties disagree over whether the lawfulness of an arrest is a question for the jury. The prosecutor contends that *Quinn* controls our analysis here, and that the lawfulness of an arrest is always a question for the jury. However, the prosecutor overlooks that *Quinn* involved a postconviction motion for directed verdict, which is a far different procedural posture from the motion to quash that is before us in this case. Here, the prosecutor was not tasked with convincing a jury that defendant's arrest was lawful. Instead, the prosecutor was tasked with establishing probable cause to bind defendant over on three charges of resisting and obstructing. One of the elements that the prosecutor had to prove in the district court was whether the arrest was lawful. Thus, at the pretrial stage, the lawfulness of an arrest is not a jury question. This was clearly demonstrated in *Moreno*, where our Supreme Court determined that a motion to quash a charge of resisting and obstructing should be granted where the prosecutor failed to establish that the arrest was lawful. 491 Mich at 58. *Quinn* is readily distinguishable because

it involved a direct appeal from a defendant who had already been convicted of resisting and obstructing under MCL 750.81d. 305 Mich App at 485, 491-492.

This Court's ruling in *Vandenberg* also illustrates this point. See *Vandenberg*, 307 Mich App 57. There, the defendant was convicted of resisting and obstructing arrest, MCL 750.81d, and making or exciting any disturbance or contention, MCL 750.170. *Id*. at 58. Relevant to this appeal, this Court reversed and remanded for a new trial after finding that the defendant's conviction "may have been premised on resistance to an unlawful arrest[.]" *Id*. at 70. While discussing the elements of resisting and obstructing, this Court stated that "pursuant to *Moreno*, the lawfulness of the arrest was an element of the offense, and it presented a factual question for the jury." *Id*., citing *Quinn*, 305 Mich App at 491-492. Like *Quinn*, *Vandenberg* is distinguishable because this Court only discussed the element of lawfulness in terms of its relation to a jury's findings of fact and ultimately, the jury's verdict. In this case, we have no jury verdict to review, and are simply tasked with determining whether the prosecution established probable cause to bind defendant over on the second and third counts of resisting and obstructing. Thus, the procedural posture of this case is more akin to that in *Moreno*, which was heard by our Supreme Court after this Court affirmed a circuit court order denying the defendant's motion to quash. 491 Mich at 43-44. At no point did the *Moreno* Court conclude that the lawfulness of the offense was a question for the jury that would prevent a court from granting a motion to quash. Instead, the *Moreno* Court found that the defendant's arrest was *not* lawful and reversed and remanded for entry of an order granting the defendant's motion to quash on that basis. *Id*. at 44. We therefore reiterate that *Moreno* controls here. The prosecutor must be able to establish that the arrest was lawful in order to survive a defendant's motion to quash a charge of resisting and obstructing.

## C. APPLICATION

We first address the district court's handling of defendant's charges. As an initial matter, we agree with the district court that Trooper Reynolds's arrest of defendant in this case was unlawful.[3] In explaining its rationale for declining to bind defendant over on Count 1, the district court stated:

> So, in terms of not giving the ID, the issue then was raised as whether or not a person has to give their ID if they have not done anything wrong, is the language. And here, I think all the officers testified pretty clearly that, if you have not done anything wrong you do not have to provide your ID . . . .
>
> So, I understand that you were going to be on your way out and I think in the interaction with you and Officer Reynolds, before Officer Reynolds reached for your wrist to make the arrest, I think that first interaction, there's definitely—it definitely leaves open the question for me as to whether or not the elements were even met because at that point, when Officer Reynolds reaches for [defendant]'s wrist to make the arrest, yes there appears to be some resistance but other than not showing the ID and the repeated conversation and back and forth where he's saying,

---

[3] We take no issue with the district court's ruling on Count 1, and address it only because of its factual relevance to the circuit court's denial of defendant's motion to quash Counts 2 and 3.

"well you did nothing wrong, but give me your ID," give me your ID, give me your ID, give me your ID, give me your ID. I think where we have the [resisting and obstructing] in that particular situation is not—that link is really not there for me. So, in terms of count one, I'm not going to bind over.

The record indicates that staff at Ethan Allen called the police because defendant was causing a disturbance in the store. Trooper Reynolds spoke to defendant at Latitude 42, and Sergeant Johnson was informed by the manager that she wanted defendant to leave and for him to be "trespassed," which simply meant that she wanted the police to ask defendant to leave and to threaten him with legal action if he returned. While talking with defendant, Trooper Reynolds asked defendant to show him his identification, purportedly in an effort to facilitate the "trespass" per the request of Latitude 42's manager. Trooper Reynolds did not ask defendant his name, date of birth, or any other identifying information, appearing solely concerned with whether defendant could produce a license or some form of identification. He told defendant, "[I]f you don't give me your identification, we're going to go to jail."

Trooper Reynolds later conceded at the preliminary examination that he had no intention of arresting defendant for trespassing and that defendant was never required to show his identification. Specifically, Trooper Reynolds testified:

> *Q*. So, you had told him, "you didn't do anything wrong," and he said at the time that he didn't need to show [] ID if he didn't do anything wrong, correct?

> *A*. Well, he did because I was going to trespass him.

> *Q*. But you never told him that, correct?

> *A*. Correct, but when I'm telling him I need to see his ID, then I need to see his ID.

> *Q*. So you're saying—lets go back. He's required to give you his ID even if he does nothing wrong?

> *A*. No.

> * * *

> *Q*. Do you remember, you never had a conversation with the people at Ethan Allen about—specifically about trespassing him, correct?

> *A*. Specifically, no. I don't think so.

> *Q*. Do you remember driving, on your short drive over from the Ethan Allen next door to Latitude 42 saying that, "we don't really have anything to arrest him for, we'll just ask him to leave," correct?

> *A*. Yes, I believe so.

-8-

*Q.* So, you had that conversation on your way over to Ethan Allen that you had no reason to arrest him []. And you never spoke with the people at Ethan Allen about trespassing him, correct?

*A.* Specifically, no.

Trooper Reynolds went on to concede that he did not need to see defendant's identification to "trespass" him.

The evidence adduced at the preliminary examination clearly establishes that Trooper Reynolds arrested defendant solely for failing to hand over some form of identification. Failing to provide identification upon request by a police officer is not itself a crime or statutory offense in Michigan. Further, no additional evidence in the record indicated that the officers had a "reasonably articulable suspicion that criminal activity [wa]s afoot[.]" *Quinn*, 305 Mich App at 492. Without proof that defendant had either engaged in a crime, or was imminently going to commit a crime, his failure to provide identification to police was not a lawful justification for his arrest. *Id.* Thus, we agree with the district court's decision to dismiss Count 1 of the felony information.

However, we conclude that the district court abused its discretion by binding defendant over for trial on Counts 2 and 3, which concerned his attempts to resist arrest in relation to Sergeant Johnson and Officer McLain. The district court explained its rationale for the bindover, stating:

I think what begins to elevate this into activity that is clearly disobeying commands and actively moving more into an area of resistance is when we have the testimony of you biting Officer Johnson. We also have the testimony of the kicking of Officer McLain.

You may have defenses at trial as to why you engaged in that activity of assaulting those police officers but in terms of meeting the probable cause standard, based upon that testimony, I am going to bind over on counts two and three because the testimony pretty much provided clearly that there was assaulting that was happening against police officers who were asking you to show your ID and leave the premises and at that point, you weren't. And so, for those two charges I am going to bind over.

The district court's rationale for binding defendant over on Counts 2 and 3 focused primarily on the measures that defendant took to attempt to avoid the arrest, including biting Sergeant Johnson and kicking Officer McLain. However, the district court overlooked that the prosecution still needed to establish that the arrest was lawful. See *Moreno*, 491 Mich at 58. For the reasons already explained in relation to Count 1, we conclude that the arrest was unlawful. Moreover, defendant properly resisted arrest. Under *Moreno*, "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest[.]" 491 Mich at 47 (quotation marks and citation omitted). "[T]he basis for such preventive or resistive action is the illegality of an officer's action, to which [a] defendant immediately reacts." *Id.* (quotation marks and citation omitted). The arrest did not become lawful merely because defendant resisted arrest

by biting and kicking. Accordingly, the district court abused its discretion by binding defendant over for trial on Counts 2 and 3 of the felony information.

Also at issue on appeal is the circuit court's handling of defendant's motion to quash Counts 2 and 3. The circuit court denied the motion to quash, explaining:

Where Defendant's argument ultimately fails is that the right to resist an unlawful arrest must be reasonable.

Defendant cites *People versus Dillard* which is at 115 Mich App 640, 1982, which introduces the longstanding principle that a person should use no more force than reasonably appears necessary to repel—excuse me—to repel a threat into the resisting and obstructing context.

*Dillard* involved the threatening of an officer with a shotgun while resisting an unlawful arrest and whether that was a reasonable form of resistance. Defendant uses *Dillard* to argue that the alleged biting and kicking was reasonable under the circumstances, however Defendant fails to recognize that the determination of reasonableness under the circumstances is not a question of law, but a question to be decided by the ultimate fact finder, that is the jury.

Therefore, the examining magistrate's finding of probable cause on counts 2 and 3 of the original complaint and on all the elements to these charges falls well within a principle range of outcomes.

The circuit court thus ruled that whether defendant "reasonably" resisted arrest was a question for the jury to decide, which precluded it from granting the motion to quash. The circuit court cited no law in support of the notion that such is the case, and engaged in no analysis of the elements of resisting and obstructing, including whether the arrest was unlawful, see *Moreno*, 491 Mich at 51-52. Much like the district court, the circuit court entirely overlooked that the prosecutor had to prove the lawfulness of the arrest as an element of resisting and obstructing under MCL 750.81d. *Quinn*, 305 Mich App at 492; *Moreno*, 491 Mich at 47, 49. Further, the *Moreno* Court reiterated the longstanding principle that "the right to resist unlawful arrests, and other unlawful invasions of private rights, is well established in our state's common law," *id*. at 46-47, but did not conclude that the "reasonableness" of that resistance is a jury question, even where the officer tore his hamstring and bruised his elbow while attempting to arrest the defendant. *Id*. at 43.

We hold that like the defendant in *Moreno*, defendant's motion to quash should have been granted. The arrest leading to the second and third counts of resisting and obstructing against defendant was unlawful. Sergeant Johnson and Officer McLain were engaged in this unlawful arrest when defendant bit Sergeant Johnson and kicked Officer McLain. As noted herein, defendant "may use such reasonable force as is necessary to prevent an illegal attachment and to prevent an illegal arrest[.]" *Id*. at 47 (quotation marks and citation omitted). Defendant had every right to exercise reasonable force to resist the illegal arrest. This had no bearing on whether the prosecution could establish probable cause that the arrest was lawful. Because the arrest underlying Counts 2 and 3 was unlawful, the circuit court abused its discretion in failing to grant the motion to quash. See *Hawkins*, 340 Mich App at 173.

-10-

## III.  CONCLUSION

Reversed and remanded for entry of an order granting defendant's motion to quash.  We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates