*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM MOTTEN, JR.,

        Defendant-Appellant.

FOR PUBLICATION
April 18, 2024
9:15 a.m.

No. 363044
Wayne Circuit Court
LC No. 01-009240-01-FC

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

CAMERON, J.

This case comes before us on remand from our Supreme Court, which directed us to consider whether *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019), "should apply retroactively to cases that have become final on direct review." *People v Motten*, 511 Mich 1003 (2023) (*Motten II*). For the reasons stated below, we conclude that *Beck*'s holding is not retroactive on collateral review. We therefore affirm the trial court's denial of defendant's successive motion for relief from judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court previously summarized the pertinent facts of this case on direct appeal:

[D]efendant was playing craps at a private club and became angry over a bet. Later, he pulled out a handgun and began firing into the air. After two bystanders grappled with defendant, defendant shot Charles Mickle, the doorman, in the leg and abdomen. A witness described defendant as shooting multiple shots "just like he was target practicing." Defendant left the house and returned a short time later, when he shot Lorenzy Henson, the club's owner, in the abdomen. Hensen [sic] described how defendant looked him in the eyes before he shot him. Sometime during these events, Edward Jarette, who had been hired to watch peoples' cars, was fatally shot in the chest. [*People v Motten*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2004 (Docket No. 246417) (*Motten I*), p 2.]

In defendant's first trial, he was acquitted of first-degree murder, MCL 750.316, and the jury could not agree on several other charges related to this incident. On retrial, defendant was convicted by a jury of two counts of assault with intent to murder (AWIM), MCL 750.83, one count of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. At sentencing, the prosecution argued Offense Variable (OV 3) should be assessed at 100 points, because death resulted from the commission of defendant's crime and homicide was not the sentencing offense. Defendant objected to the proposed assessment because he had been acquitted of the murder charge in the first trial. The trial court agreed with the prosecution and assessed 100 points for OV 3, which shifted defendant's sentencing guidelines range from 126 to 210 months' imprisonment to 171 to 285 months' imprisonment. The trial court sentenced defendant to 285 to 700 months' imprisonment on each AWIM count, three to five years' imprisonment for felon-in-possession, and two years' imprisonment for felony-firearm.

Thereafter, defendant filed several successive motions for relief from judgment under MCR 6.502(G). Relevant to this appeal, his most recent motion argued that he was entitled to resentencing under *Beck*, 504 Mich at 629, which held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." Defendant argued that his motion was not procedurally barred by MCR 6.502(G) because *Beck* represented "a retroactive change in law that occurred after the first motion for relief from judgment was filed" under MCR 6.502(G)(2)(a). The trial court denied defendant's motion, reasoning that he was not entitled to relief under *Beck* because the new rule was not retroactively applicable on collateral review. We now consider defendant's appeal as on leave granted.

## II. STANDARD OF REVIEW

A trial court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *People v Poole*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 352569); slip op at 8. "An abuse of discretion occurs when the trial court makes an error of law or when its decision falls outside the range of reasonable and principled outcomes." *Id*. Whether a judicial decision is to be given retroactive effect is a question of law reviewed de novo on appeal. *People v Quinn*, 305 Mich App 484, 489; 853 NW2d 383 (2014).

## III. ANALYSIS

The trial court did not abuse its discretion by denying defendant's successive motion for relief from judgment because *Beck* is not entitled to retroactive application in cases which were final at the time it was decided.[1]

_____

[1] We reject the prosecution's argument that we should refrain from determining whether *Beck* applies retroactively to cases which were final before it was decided because doing so would render this an impermissible advisory opinion. The prosecution contends that any alleged error in the scoring of OV 3 was harmless because the trial court expressly stated it was not relying on acquitted conduct when it sentenced defendant. We disagree. When defendant was sentenced, the

Similar to this case, the defendant in *Beck* was convicted by a jury of felon-in-possession and felony-firearm, but was acquitted of a murder count, among other charges. *Beck*, 504 Mich at 610. But, the trial court, in *Beck*, substantially departed from the recommended sentencing guidelines range of 22 to 76 months' imprisonment by sentencing the defendant to 240 to 400 months' imprisonment. *Id*. The trial court's primary reason for doing so was its finding, by a preponderance of the evidence, that the defendant committed the murder, despite the jury's acquittal. *Id*. at 610-612. On appeal, our Supreme Court considered whether, after a defendant was acquitted of a charge, a trial court may "take the same alleged crime into consideration when sentencing the defendant for *another* crime of which the defendant was convicted[.]" *Id*. at 608-609.

*Beck* concluded that reliance on acquitted conduct at sentencing violates due process, and, more specifically, the "guarantees of fundamental fairness and the presumption of innocence." *Id*. at 625-626. *Beck* explained:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*Id*. at 626-627 (citations omitted).]

Ultimately, *Beck* vacated the defendant's sentence and remanded for resentencing, because the trial court punished the defendant more harshly on the basis of acquitted conduct, thus violating the defendant's right to due process. *Id*. at 629-630. In effect, *Beck* "extended [the] presumption of innocence to sentencing, where the presumption shields the defendant from being held criminally responsible for the conduct of which the jury acquitted the defendant." *People v Brown*, 339 Mich App 411, 420; 984 NW2d 486 (2021).

Generally, "judicial decisions are to be given complete retroactive effect." *People v Barnes*, 502 Mich 265, 268; 917 NW2d 577 (2018). However, when a judicial decision announces a new rule, retroactive application does not extend to cases which have already become final,

---

statutory sentencing guidelines were still mandatory, and a trial court had to articulate substantial and compelling reasons for departing from the guidelines range. See *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015) (rendering the guidelines advisory only). The trial court sentenced defendant to a 285-month minimum term. While this was within the increased guidelines range, it did not fall within the unenhanced range. Therefore, if OV 3 was improperly assessed, the trial court departed from the sentencing guidelines without providing substantial and compelling reason for doing so. Moreover, our Supreme Court explicitly directed us to address whether *Beck* "should apply retroactively to cases that have become final on direct review." *Motten II*, 511 Mich at 1003.

because, "at some point, the rights of the parties should be considered frozen and a conviction . . . final." *Id*. (quotation marks and citation omitted, ellipses in original). But, even this rule is subject to exceptions. *Id*.

As our Supreme Court recognized in *Barnes*, both federal and state rules govern questions of retroactivity concerning criminal cases which are final, but still subject to collateral review. *Id*. at 268-269. The federal retroactivity test stems from the plurality opinion in *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989). *Montgomery v Louisiana*, 577 US 190, 198; 136 S Ct 718; 193 L Ed 2d 599 (2016). "Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced." *Montgomery*, 577 US at 198. But *Teague* also recognized that new substantive rules of law—that is, "rules forbidding criminal punishment of certain primary conduct, as well as rules prohibiting a certain category of punishment or a class of defendants because of their status or offense"—are not subject to the general bar against retroactive application to convictions which were final at the time the new rule was announced. *Id*. at 198 (quotation marks and citation omitted); *Teague*, 489 US at 307.

Applying the federal framework, the first question under *Teague* is always whether the decision at issue announced a new rule. *Barnes*, 502 Mich at 269. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Id*. (quotation marks and citations omitted, alteration in original). This inquiry focuses on whether the rule was dictated or compelled by preexisting precedent. *Id*. at 270. If previous decisions merely suggested or supported the rule, it will still be deemed new under the *Teague* analysis. *Id.* at 269-270.

The *Beck* opinion included a review of potentially relevant federal and Michigan caselaw, *Beck*, 504 Mich at 615-625, and determined that pertinent federal decisions were either distinguishable or unhelpful. *Id*. at 619-625. Furthermore, although our Supreme Court had considered the use of acquitted conduct at sentencing in *People v Ewing (After Remand)*, 435 Mich 443; 458 NW2d 880 (1990), and thus may have blessed this practice under certain circumstances, *Beck* questioned whether the fractured opinions in *Ewing* actually created a binding rule of law. *Beck*, 504 Mich at 617. *Beck* reasoned that, even if *Ewing* did create a rule of law, the rule was "murky at best." *Id*. Because *Beck* explicitly determined it was considering the question "on a clean slate," *id*. at 625, we conclude that *Beck* announced a new rule of law that was not *dictated* by previous precedent.

The next question under *Teague* is whether the new rule is a substantive rule of constitutional law. We find our Supreme Court's decision in *Barnes* helpful in this regard. *Barnes* considered the retroactivity of the rule in *Lockridge*, 498 Mich at 358, which declared that Michigan's previously mandatory sentencing guidelines were now only advisory. *Barnes*, 502 Mich at 267. Our Supreme Court determined *Lockridge* did not establish a substantive rule, "because it applies neither to primary conduct nor to a particular class of defendants but rather adjusts how the sentencing process functions once any defendant is convicted of a crime." *Id*. at 271. This reasoning is applicable here. *Beck*, like *Lockridge*, concerns an issue applicable during

the sentencing process only. Thus, despite its constitutional foundation, *Beck* did not create a new substantive rule of law warranting retroactive application on collateral review under *Teague*.[2]

We reach the same conclusion under Michigan's retroactivity framework. Michigan's test for determining the retroactivity of judicial decisions considers: "(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice." *Barnes*, 502 Mich at 273. A rule that "concerns the ascertainment of guilt or innocence" may warrant retroactive application, while "a new rule of procedure . . . which does not affect the integrity of the fact-finding process should be given prospective effect." *People v Sexton*, 458 Mich 43, 63; 580 NW2d 404 (1998) (quotation marks and citation omitted). Under the first prong of Michigan's test, we note that *Beck* advances the presumption of innocence by ensuring that a defendant will not be "held criminally responsible for the conduct of which the jury acquitted [them]." *Brown*, 339 Mich App at 420. Because the rule in *Beck* is irrelevant to the fact-finder's determination of guilt, it is "amenable to prospective application." *Sexton*, 458 Mich at 63.

Next, under the second prong of Michigan's test, we recognize that, while *Ewing*'s articulation of a contrary rule allowing for consideration of acquitted conduct at sentencing was not crystal clear, trial courts nevertheless engaged in judicial fact-finding using acquitted conduct under a preponderance-of-the-evidence standard. We also recognize *Ewing*'s unclear rule did not stop trial courts from citing it as authority for using acquitted conduct at sentencing.[3] Thus, the general reliance of courts on *Ewing* as sanctioning the use of acquitted conduct at sentencing weighs against retroactive application of *Beck*. See *Barnes*, 502 Mich at 274.

Finally, under the third prong of Michigan's test, the instances in which acquitted conduct was relied on at sentencing are presumably limited, such that retroactive application of *Beck* would have a lesser effect on the administration of justice than new rules affecting *all* sentences, see, e.g., *id.*, or rules which would likely result in a large number of retrials, see, e.g., *Sexton*, 458 Mich at 67. However, while this is a factor to consider, it, alone, does not outweigh the significance of the first two factors which weigh heavily in favor of the prospective-only application of *Beck*.

---

[2] Cf *Poole*, ___ Mich App at ___; slip op at 12 (holding the new rule under *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), rendering mandatory life-without-parole sentences for 18-year-old defendants unconstitutional was substantive because it applied to a category of punishment for a class of defendants on the basis of their status, and was thus retroactive).

[3] See, e.g., *People v Rose*, 485 Mich 1027, 1027 (2010) (KELLY, C.J., dissenting) (expressing reservation about the trial court's reliance at sentencing on conduct underlying acquitted charge); *People v Granderson*, 212 Mich App 673, 678-679; 538 NW2d 471 (1995) (rejecting a claim of prosecutorial error at sentencing premised on an argument concerning acquitted conduct); *People v Coulter*, 205 Mich App 453, 456; 517 NW2d 827 (1994), citing *Ewing*, 435 Mich at 446 ("A sentencing court is allowed to consider the facts underlying uncharged offenses, pending charges, and acquittals."); *People v Harris*, 190 Mich App 652, 663-664; 476 NW2d 767 (1991) (finding no abuse of discretion occurred in assessing an OV on the basis of acquitted conduct).

We therefore conclude that retroactive application of *Beck* on collateral review is not warranted under either the federal or Michigan frameworks. Consequently, the trial court did not abuse its discretion by denying defendant's successive motion for relief from judgment.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Anica Letica