*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAWN MICHAEL BABCOCK,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2024
10:23 AM

No. 367406
Mason Circuit Court
LC No. 2022-004091-FH

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

Defendant appeals by right his bench trial convictions of one count of possession of methamphetamine, MCL 333.7403(2)(b)(1), and one count of resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to serve 4 to 20 years' imprisonment for possession of methamphetamine, and 366 days' to two years' imprisonment for resisting or obstructing a police officer, to be served concurrently. We affirm.

## I. FACTUAL BACKGROUND

This case began when the car in which defendant was a passenger was pulled over for a defective taillight. The officers had prior encounters with defendant and knew that he had a history of being associated with methamphetamine. The police noticed defendant was holding a Leatherman Multitool,[1] and because, in the officers' experience, methamphetamine users could experience paranoia and engage in erratic behavior, the police decided to have defendant exit the vehicle so they could search for weapons. While defendant exited the car and put down the multitool, he refused to comply with the pat down, yelling and resisting to the point that the police had to physically force him against the car to conduct the search. The police found a meth pipe in defendant's pocket.

---

[1] This is a foldable device that has several tools such as knives, screwdrivers, and scissors inside of it.

After a motion to suppress the evidence found during this search was denied, defendant was convicted and sentenced as described above. This appeal followed.

## II. ANALYSIS

## A. MOTION TO SUPPRESS EVIDENCE

Defendant argues that the trial court erred by denying his motion to suppress the evidence found during the pat-down search because the search violated the Fourth Amendment. We disagree.

We review "de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies," and we review for clear error any underlying factual findings. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, review is de novo." *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted).

"The Fourth Amendment of the United States Constitution—like Article 1, § 11 of the 1963 Michigan Constitution, whose protections have been construed as coextensive with its federal counterpart, protects against unreasonable searches and seizures." *People v Mead*, 503 Mich 205, 212; 931 NW2d 557 (2019), (citations omitted); US Const, Am IV; Const 1963, art 1, § 11. A *Terry*[2] stop is a "brief, on-the-scene detention of an individual [that] is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021) (quotation marks and citation omitted). In general, "[a] seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called '*Terry* stop' than to a formal arrest." *Rodriguez v United States*, 575 US 354; 135 S Ct 1609; 191 L Ed 2d 492 (2015) (quotation marks, citation and alteration omitted).

The trial court found that defendant's behavior caused the officers to reasonably suspect that defendant was armed and dangerous. The Court explained:

> In this situation, the officers had the right to stop the car. They had the right to ask the individuals to get out of the car. [Defendant] had a tool in his hand. It was a perfectly legitimate tool to use in certain situations. However, it was his behavior that elevated the situation. His yelling, his not listening to the officers. And, that's what, you know, elevated the situation and that's also what extended the situation was [defendant's] own behavior. And it was his behavior that increased what could have been a very routine traffic stop into something more.

---

[2] *Terry v Ohio*, 392 US 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

The scope of the pat-down search is strictly limited to a search that is "reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be issued to assault an officer." *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v Ohio*, 392 US 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968). In this case, police officers knew defendant from previous encounters as a meth user and seller. Based on their extensive police experience, they knew that meth users and sellers tend to harbor paranoid tendencies and carry weapons. Further, officers saw that defendant was holding a Leatherman tool that contained at least one knife and other sharp objects. Thereafter, defendant defied several requests by the officers to place his hands on the car, and he instead reached into his pockets and moved in an agitated manner. On the basis of this evidence, the trial court correctly ruled that defendant's behavior escalated the traffic stop and that he posed a risk of harm that justified the officer's pat down search to protect the and others at the scene.

The trial court further concluded that seizure of the meth pipe was permissible based on the "plain feel" exception to the warrant requirement:

> Asking the defendant to get out of the car was reasonable. Then he was non-compliant. And, he had another weapon on him. I don't know specifically what type of knife it was, but he did have it on him and then the meth pipe was found from plain feel and there's a very specific exception to the search warrant requirement that allows for discovery or—on the plain feel after a pat down.

The "plain feel" exception, allows officers to search the interior of clothing when an object's "incriminating character is immediately apparent" during a limited protective search. *Minnesota v Dickerson*, 508 US. 366, 373, 375-376; 113 S Ct 2130, 124 L Ed 2d 334 (1993). In this case, Sergeant Haveman knew that he felt a meth pipe in defendant's pocket because it had a distinct size and shape. An officer may reach into a suspect's clothing if the officer feels an object, "the identity of the object is immediately apparent" to the officer, and "the officer has probable cause to believe that the object is contraband . . . ." *Champion*, 452 Mich at 101. Furthermore, video footage from Officer Gilmurray's body camera showed that defendant told the officers that he had "a little bit of meth" on him. For these reasons, the Sergeant Haveman was justified in removing the pipe from defendant's clothing.

## B. INSUFFICIENT EVIDENCE

Defendant argues that the prosecution did not present sufficient evidence to support his conviction of resisting or obstructing a police officer. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court

will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [*Id*. (citations omitted).]

To prove the crime of resisting or obstructing a police officer under MCL 750.81d, the prosecution must show: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). The term "obstruct" is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

With regard to the first two elements, it was undisputed that defendant knew that the person giving him commands was a police officer performing his duties. At the bench trial, defendant argued that he was compliant when Officer Gilmurray asked him to exit the vehicle. However, defendant now argues that he resisted and obstructed only *unlawful* orders or commands of the police. In other words, defendant does not dispute that he obstructed a police officer, but asserts that doing so was permissible because the commands were unlawful.

The prosecution must "establish that the officers' actions were lawful as an element of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). In his brief, defendant states that "the statute suggests that if the defendant does not know [that the officers' actions duties] are lawful then he can resist arrest. Therefore, if an officer's actions could cause a person to reasonably believe that his actions are not lawful, this would be a defense to the charge." Put differently, defendant suggests that his subjective belief whether the actions or commands were lawful is sufficient to establish a defense to a charge of obstructing a police officer.

The primary goal of statutory interpretation is to effectuate the intent of the Legislature. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). When the statute's language is clear, judicial interpretation is not permitted, and courts apply the plain language of the statute. *People v Roseburgh*, 215 Mich App 237, 239; 545 NW2d 14 (1996). Contrary to defendant's argument, there is nothing in the statute to suggest that a person lawfully resists if that person reasonably believes that police actions are unlawful. Defendant relies on *People v Moreno*, 491 Mich 38, 41; 814 NW2d 624 (2012) to support his position. However, the issue in *Moreno* was whether MCL 750.81d abrogated the common-law right for an individual to resist an unlawful arrest when police officers illegally forced their way into the defendant's home without a warrant and no exception to the warrant requirement applied. *Id*. at 43. According to *Moreno*, Mich at 51-52, and *Quinn*, 305 Mich App at 492, "the prosecution must establish that the officers' actions were lawful" as an element of resisting or obstructing a police officer.

In this case, when viewed in a light most favorable to the prosecutor, the evidence established that the officers' actions were lawful. As discussed, the record establishes that the police performed a valid traffic stop of the vehicle in which defendant was a passenger, that the

police had valid reasons to order defendant to exit the car and to perform a pat down, and that the police lawfully removed the meth pipe from defendant's clothing. Therefore, prosecution presented sufficient evidence that defendant resisted lawful police actions and commands.

## C. JAIL CREDIT

Defendant argues that he is entitled to additional jail time credit or remand for additional fact-finding to determine the correct amount of credit due. We disagree.

"Whether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).

The statute addressing jail credit for time served while awaiting sentencing provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond *for the offense of which he is convicted*, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing. [MCL 769.11b (emphasis added).]

During the sentencing hearing, defendant argued that the credit of 133 days was incorrect, and the trial court decided that defendant was entitled to an additional 51 days of credit for the time he served from May 22, 2022—the day of the arrest—until July 12, 2022, which brought the total credited days to 184. However, defendant argues that he should have been credited for 242 days instead of 51 days (a total of 375 days) for the period from May 2022 until January 2023. The trial court ruled that defendant was not entitled to more credit for those days because defendant was sentenced to 12 months in jail for another offense on July 12, 2022, which he served until January 2023.

On appeal, defendant argues that the calculation of 184 days is inconsistent with the register of actions, but it is apparent that defendant has confused the sentencing day for another case on July 12, 2022, with the arrest-bond date information on the PSIR in the current case. For clarity, defendant was arrested in this case on May 22, 2022; defendant was then sentenced to 12 months in jail for a different offense on July 12, 2022. Our Supreme Court has explained that "[t]o be entitled to sentence credit for presentence time served, a defendant must have been incarcerated '*for the offense of which he is convicted*.' " *People v Prieskorn*, 424 Mich 327, 340; 381 NW2d 646 (1985), quoting MCL 769.11b (emphasis added). Additionally, this Court has held that a defendant is not entitled to jail credit when incarcerated for another offense. *People v Patton*, 285 Mich App 229, 239; 775 NW2d 610 (2009). For the same reasons, defendant is not entitled to credit for the July-January period during which he was serving a sentence for another crime.

## D. STANDARD 4 BRIEF

Defendant argues that the trial court violated the Fifth Amendment to the United States Constitution by proceeding to trial without first requiring that the prosecution obtain an indictment from a grand jury.

Questions of constitutional law are reviewed de novo. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). Because the issue is unpreserved, this Court's review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 776; 597 NW2d 130 (1999). Under the plain error test, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error prejudiced the defendant by affecting the outcome of the proceedings. *Id*. at 763. Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

Defendant acknowledges that the United States Supreme Court held in 1884 that the Fourteenth Amendment to the United States Constitution does *not* require that states abide by the Fifth Amendment's grand jury requirement. *Hurtado v California*, 110 US 516, 534-535; 4 S Ct 111; 28 L Ed 232 (1884). Nevertheless, he argues that *Hurtado* was incorrectly decided and invites this Court to reevaluate its holding. This Court has no right to overrule the United States Supreme Court's interpretation of the federal constitution. See *People v Lechner*, 307 Mich 358, 360-361; 11 NW2d 918 (1943). Therefore, defendant's argument is without merit.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett