*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELVIN FORD,

        Defendant-Appellant.

UNPUBLISHED
August 28, 2025
8:53 AM

No. 370794
Wayne Circuit Court
LC No. 22-006622-01-FH

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). On appeal, defendant argues he received ineffective assistance of counsel as a result of defense counsel's failure to request a special jury instruction regarding unlawful use of force, and the prosecution failed to present sufficient evidence that the officers' use of force was lawful. We affirm.

## I. BASIC FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Shortly after midnight on the day in question, Detroit Police Officers Steven Scott and Kristopher Gruben were driving a fully-marked patrol car in one of two westbound lanes of McNichols Road in Detroit, Michigan, when they encountered defendant, who was driving in the other westbound lane. Although the parties provided different accounts of how the encounter began, the dash and body cameras captured much of the incident.

As both cars approached the intersection of Gunston Avenue, defendant suddenly turned left onto Gunston Avenue. While making the turn, defendant's car accelerated; crossed the centerline of McNichols Road, into the eastbound lane of traffic; and then traveled through the center turn lane of northbound Gunston Avenue, next to a stopped car. Although the parties dispute whether defendant sped or used his turn signal, defendant admitted he accelerated through a yellow traffic light while making the turn. Defendant then continued into the southbound lane of Gunston Avenue and quickly turned into the driveway of his residence, which was the first house after the intersection. Believing they witnessed defendant engage in reckless driving, the officers activated

the police car's lights, initiated a traffic stop, and followed defendant into his driveway. At that point, the officers planned to arrest defendant for reckless driving.

As the officers exited their car, defendant stepped out of his. Officer Scott approached defendant and repeatedly commanded him to stay inside his car. Defendant failed to comply, reaching back into his car. So Officer Scott grabbed defendant's wrist to place him in handcuffs. Defendant tried to pull out of Officer Scott's grasp, and a physical altercation began between the two men. Officer Gruben then tried to intervene, at which point he made physical contact with defendant and repeatedly commanded him to put his hands behind his back. Defendant did not comply and continued physically resisting the officers. While the physical altercation was ongoing, a neighborhood person, who was known to the officers and had been at a nearby gas station, inserted himself into the altercation, both verbally and physically. Additionally, several of defendant's family members exited defendant's residence, gathered near the altercation, and verbally intervened.

In the body-camera footage of the incident, defendant can be heard asking the officers what he had done. For their part, the officers can be heard giving defendant numerous commands, including telling him to get on the ground under threat of the officers deploying their Tasers. Although defendant did not initially comply, he eventually knelt down. Officer Gruben then tased defendant, and Officer Scott placed defendant in handcuffs. Approximately 2 minutes and 14 seconds elapsed between the time defendant stepped out of his car and when the officers placed defendant in the back of the police car. There is no indication that either officer expressly told defendant he was under arrest, nor the reason for his arrest, during the altercation.

The prosecution ultimately charged defendant with two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). At defendant's jury trial, Officer Gruben, Officer Scott, and defendant each testified about the incident. Additionally, the trial court admitted the dash-camera and body-camera footage as evidence, which the prosecution played for the jury. During defense counsel's closing argument, he argued that defendant did not intentionally ignore the officers' commands or resist arrest; rather, defendant did not know he was going to be arrested, nor that the officers were acting lawfully.

Relevant to the present appeal, the trial court gave the following jury instruction regarding the elements of assaulting, resisting, or obstructing a police officer:

Defendant is charged with the crime of assaulting, battering, wounding, resisting, obstructing or endangering a police officer, who was performing his duties. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that [defendant] assaulted, battered, wounded, resisted, obstructed Officer Kristopher Gruben and/or Officer Steven Scott who was the police officer. . . . Second, [defendant] knew or had reason to know that if the Officer Kristopher Gruben and/or Officer Steven Scott who is a police officer performing his duties at that time [sic]. Third, that Officer Kristopher Gruben and/or Officer Steven Scott gave [defendant] a lawful command, was making a lawful arrest or was otherwise performing a lawful act.

Defense counsel affirmed that he had no objections to the jury instructions. The jury ultimately found defendant guilty of both counts of assaulting, resisting, or obstructing a police officer. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues he received ineffective assistance of counsel as a result of defense counsel's failure to request a special jury instruction regarding defendant's right to resist unlawful actions of police officers. We disagree.

To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move in the trial court for a new trial or an evidentiary hearing, *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018), or move in this Court to remand for a *Ginther*[1] hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant concedes he did neither, and this issue is therefore unpreserved.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "Constitutional questions of law are reviewed de novo, while findings of fact are reviewed for clear error." *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020). "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *Id*.

A defendant claiming ineffective assistance of counsel must demonstrate: "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, 335 Mich App at 228. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citations omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Traver (On Remand)*, 328 Mich App 418, 422; 937 NW2d 398 (2019) (quotation marks and citation omitted). "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *Yeager*, 511 Mich at 488 (citations omitted).

On appeal, defendant's claim of ineffective assistance of counsel stems from defense counsel's failure to request a special jury instruction regarding defendant's right to resist unlawful actions of police officers.[2] "A criminal defendant has the right to have a properly instructed jury

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Although defendant does not directly raise the adequacy of the jury instructions as an issue on appeal, he intertwines a challenge to the jury instructions within both of his arguments. However, defense counsel expressly stated at trial that he did not object to the jury instructions, thereby waiving this issue for appellate review. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821

consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Head*, 323 Mich App at 537 (quotation marks and citation omitted). Defendant's ineffective assistance claim relates to only one of the elements the prosecution is required to prove in connection with a conviction for assaulting, resisting, or obstructing a police officer under MCL 750.81d(1)—that the officer's actions were lawful. *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012); *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014).

Defendant correctly notes that, although the trial court's instructions to the jury addressed the lawfulness element, it did not address the legal standards applicable to determining whether the officers' actions were lawful in this case. In this respect, the jury instructions were inadequate. See *People v Carroll (Carroll I)*, 514 Mich 851, 851 (2024) (stating that a jury instruction for resisting and obstructing a police officer that omits a description of the applicable law governing an officer's legal authority to act does not "fairly present[] the issues to be tried and adequately protect[] the defendant's rights") (quotation marks and citation omitted; alterations in original).

Although defense counsel's failure to object to the inadequate instruction likely fell below an objective standard of reasonableness, *Abcumby-Blair*, 335 Mich App at 228, this failure does not constitute ineffective assistance of counsel per se. For example, in *Carroll I*, 514 Mich at 851-852, after finding the jury instruction in question inadequate, our Supreme Court remanded to this Court to consider "whether trial counsel's failure to request such an instruction was 'representation [that] fell below an objective standard of reasonableness' that prejudiced the defendant." (Citations omitted; alteration in original.) On remand, this Court concluded that, even if the trial counsel's failure to object to the inadequate instruction was objectively unreasonable, the defendant was not entitled to relief because she failed to persuasively demonstrate a reasonable probability the outcome of the case would have been different "had the instruction been given." *People v Carroll (On Remand) (Carroll II)*, unpublished per curiam opinion of the Court of Appeals, issued October 1, 2024 (Docket No. 361280), pp 4-5.[3]

Regardless, however, defendant's ineffective-assistance-of-counsel argument does not address defense counsel's failure to request the full jury instruction regarding the legal standards applicable to determining the lawfulness of the traffic stop or arrest.[4] Instead, defendant contends

---

(2019). Accordingly, our review of the adequacy of the jury instructions is limited to determining whether defendant received ineffective assistance of counsel.

[3] Although unpublished opinions of this Court are not binding, *Carroll II* is persuasive because it involves the same jury instructions at issue in the present case. See, e.g., *People v Urbanski*, 348 Mich App 90, 110 n 6; 17 NW3d 430 (2023) ("Unpublished opinions of this Court are not binding but may be considered for their persuasive value."). Unfortunately, the Wayne County Prosecutor's Office in this appeal did not cite or discuss the *Carroll* cases despite defendant's reliance on them in his brief.

[4] Even if defendant had challenged defense counsel's failure to object to the inadequate instructions, defendant would not be entitled to relief on that ground. Defendant has not challenged

defense counsel should have requested a special jury instruction regarding defendant's right to proportionately resist the officers' allegedly unlawful use of force. Although defendant attempts to frame this as a matter affecting the lawfulness of the officers' conduct under MCL 750.81d(1), he does not dispute that the officers had grounds to conduct a valid traffic stop, nor does he challenge the legality of the initial arrest for reckless driving or the lawfulness of the officers' commands throughout the encounter.

"Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490. However, it can also constitute a matter of trial strategy. *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017). Here, defendant has failed to overcome the strong presumption that defense counsel's failure to request the special jury instruction was "born from sound trial strategy." *Yeager*, 511 Mich at 488. Defense counsel's theory at trial was not that the officers' conduct was unlawful, nor that defendant was resisting the officers' unlawful use of force. Instead, defense counsel argued that defendant did not know he was under arrest or that the officers were acting lawfully, and he resisted out of fear and confusion.

Although defendant correctly points out on appeal that defense counsel's strategy appeared to include "depict[ing] the police officers as the aggressors" and arguing that defendant "was simply defending himself," this was within the broader context of defense counsel's theory that defendant did not know what was happening. There is no indication in the record that defense counsel sought to challenge the lawfulness of the traffic stop or arrest or tried to frame the officers' actions—including their use of force—as unlawful. Defense counsel could have reasonably decided not to focus on the legality of the officers' conduct or subsequent use of force, especially considering defendant plainly resisted Officer Scott's lawful commands to stay in his car and attempt to handcuff defendant, which escalated the encounter. Accordingly, there would have been no reason for defense counsel to request a special instruction regarding the unlawful use of force.

Moreover, on this record, an instruction regarding unlawful use of force would not have been warranted. Again, defendant does not challenge the lawfulness of the traffic stop or arrest. The first instance of physical force occurred when Officer Scott grabbed defendant's wrist to place him in handcuffs. Notably, Officer Scott did so while trying to effectuate a lawful arrest and only after defendant failed to comply with commands to stay in his car. "If a police officer lawfully arrests an individual, he may use reasonable force if that individual resists." *People v Jones*, 297 Mich App 80, 89; 823 NW2d 312 (2012) (quotation marks and citation omitted). Although the situation quickly escalated after Officer Scott grabbed defendant's wrist, we cannot conclude that grabbing an individual's wrist while attempting to put them in handcuffs, during a lawful arrest,

---

the lawfulness of the traffic stop, initial arrest, or the officers' commands, and we do not discern any illegality. Accordingly, assuming defense counsel's failure to object to the incomplete lawfulness instruction fell below an objective standard of reasonableness, there is not a reasonable probability that the jury would have acquitted defendant of assaulting, resisting, or obstructing either officer had defense counsel requested a complete jury instruction on the lawfulness element of the offense. *Abcumby-Blair*, 335 Mich App at 228.

constitutes unreasonable force. The physical altercation between defendant, Officer Scott, and Officer Gruben that followed resulted from defendant's physical resistance to being placed in handcuffs and continued failure to comply with the officers' lawful commands. Considering the foregoing, defendant has not demonstrated that defense counsel's failure to request the special jury instruction fell below an objective standard of reasonableness. *Abcumby-Blair*, 335 Mich App at 228.

Even if defense counsel's failure to request the special instruction fell below an objective standard of reasonableness, defendant has not persuasively demonstrated that "but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different" had the instruction been given. *Yeager*, 511 Mich at 488 (cleaned up). Regarding Officer Scott, the prosecution presented evidence of defendant's guilt unrelated to Officer Scott's eventual use of force. More specifically, Officer Gruben testified that, when the officers got out of their car and approached defendant's car, they were attempting to effectuate an arrest. Both officers' testimony, corroborated by video evidence admitted at trial, indicated that the officers and defendant got out of their cars at about the same time. Officer Scott gave defendant several orders to stay in his car, and defendant failed to comply. Notably, MCL 750.81d(7)(a) defines "obstruct" to include "a knowing failure to comply with a lawful command." Although defendant claimed he did not hear Officer Scott's commands, the dash-camera footage demonstrated that Officer Scott was standing a short distance away from defendant at the relevant time. Considering the evidence presented by the prosecution, we cannot conclude there is a reasonable probability the jury would have acquitted defendant of obstructing Officer Scott if defense counsel had requested specific instructions regarding defendant's right to proportionately resist an officers' unlawful use of force. *Abcumby-Blair*, 335 Mich App at 228.

Regarding both officers, the prosecution presented evidence that the officers' use of force was reactive to defendant's physical resistance and repeated failures to comply with the officers' numerous, lawful commands. Moreover, as discussed in greater detail later, the prosecution presented substantial evidence demonstrating the officers' use of force was reasonable under the totality of the circumstances. Thus, there is not a reasonable probability that the jury would have acquitted defendant of assaulting, resisting, or obstructing either officer if defense counsel had requested special jury instructions regarding unlawful use of force. *Id*.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues the prosecution presented insufficient evidence that the officers acted lawfully. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Thurmond*, 348 Mich App 715, 721; 20 NW3d 311 (2023) (quotation marks and citation omitted). "Circumstantial evidence, and reasonable inferences arising from the evidence, may constitute satisfactory proof of the elements of the offense." *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018) (quotation marks and citation omitted). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence

or the credibility of witnesses." *People v Parkinson*, 348 Mich App 565, 574; 19 NW3d 174 (2023) (quotation marks and citation omitted).

Defendant was convicted of two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). In order to convict a defendant for this offense, the prosecution must prove the following elements: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). The prosecution must also prove that the officer's actions were lawful. *Quinn*, 305 Mich App at 491-492.

Defendant's challenge to the sufficiency of the evidence is limited to the lawfulness of the officers' use of force against defendant, which defendant characterizes as excessive and unreasonable. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v Connor*, 490 US 386, 395; 109 S Ct 1865; 104 L Ed 2d 443 (1989) (emphasis omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (quotation marks and citations omitted). In so doing, courts must consider the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

As previously mentioned, "[i]f a police officer lawfully arrests an individual, he may use reasonable force if that individual resists." *Jones*, 297 Mich App at 89 (quotation marks and citation omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 US at 396 (quotation marks omitted). Notably, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-397.

Here, there was evidence to support the conclusion that the officers' use of force was not excessive under the circumstances. Officers Scott and Gruben each testified that, after witnessing defendant engage in what they believed to be reckless driving, the officers activated the emergency lights on their police car, followed defendant's car to initiate a traffic stop, and pulled into defendant's driveway behind him. According to Officer Gruben, when the officers got out of their car and began approaching defendant's, they were attempting to effectuate an arrest for reckless driving. Such action was within the officers' lawful authority. See *People v Maggit*, 319 Mich App 675, 683 n 3; 903 NW2d 868 (2017) ("MCL 764.15(1)(a) provides statutory authorization for a police officer to make an arrest without a warrant for a felony, a misdemeanor, or an ordinance violation committed in the officer's presence."); MCL 257.626(1)-(4) (indicating that reckless driving constitutes a misdemeanor or felony, depending on the circumstances).

Officer Scott testified that, after defendant failed to comply, he grabbed defendant's wrist to place defendant in handcuffs. The video evidence demonstrated that defendant immediately began resisting Officer Scott, and a physical altercation began; Officer Gruben attempted to help Officer Scott restrain defendant, and the situation escalated; during the course of the incident, defendant failed to comply with numerous commands, including to put his hands behind his back or get on his knees under threat of being tased; defendant and the officers used physical force against each other; defendant's hands, whether intentionally or otherwise, were on or near Officer Scott's duty belt—which held Officer Scott's Taser, handcuffs, and firearm—at several times; a bystander intervened physically and verbally; and several of defendant's family members verbally intervened and ignored the officers' commands to back up.

The video evidence and officers' testimony further indicated that, eventually, the officers disengaged from the physical struggle, backed up, and repeatedly warned defendant that they would tase him if he did not get on the ground. Defendant ignored these commands several times before kneeling, at which point Officer Gruben tased him. Although defendant was no longer physically resisting when he was tased, the scene remained chaotic, and defendant arguably continued to ignore the officers' additional—albeit vague—commands to get down on the ground further. Moreover, Officer Gruben gave defendant numerous warnings throughout the altercation that he would be tased if he did not cooperate. The video evidence clearly demonstrates that, though the entire encounter only lasted a few minutes, defendant nonetheless had ample time to comply with the officers' lawful commands and stop physically resisting before being tased.

As an initial matter, we note that, viewing the foregoing evidence in a light most favorable to the prosecution, *Thurmond*, 348 Mich App at 721, a rational trier of fact could find, beyond a reasonable doubt, that defendant assaulted, resisted, or obstructed the officers regardless of whether the officers ultimately used unlawful force against him. As discussed in greater detail earlier, the prosecution presented evidence demonstrating that defendant obstructed Officer Scott before Officer Scott ever touched him. Moreover, considering the traffic stop and arrest were lawful, defendant had no right to resist either officer from the outset. The officers' uses of force against defendant were reactive to defendant's own failure to comply with the officers' lawful commands and his physical resistance when the officers lawfully attempted to arrest him.

Regardless, although defendant's alleged crime underlying the attempted arrest may not have been severe, per se, the foregoing evidence supported a finding that defendant was actively resisting a lawful arrest and posed an immediate threat to the officers through his physical resistance, proximity to Officer Scott's duty belt, and repeated refusal to comply with the officers' commands. *Graham*, 490 US at 396. The constant movement of at least three other bystanders on the scene only exacerbated those circumstances. Considering the foregoing, a reasonable officer at the scene could have concluded that the officers' use of force against defendant was reasonable under the totality of the circumstances. *Id*. Accordingly, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that the officers' use of force against defendant was lawful. *Thurmond*, 348 Mich App at 721.

## IV.  CONCLUSION

For these reasons, we affirm the judgment of the trial court.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock